**WESTINGHOUSE ELECTRIC CORPORATION**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND.**

**ENVIRO–SCOPE CORPORATION** t/a **Systems Furniture Corporation** a/t/a **Modular Installation Corporation** a/t/a **Modular Systems Corporation, Successor by merger to Systems Furniture Company, Versa Flex Corporation and Systems Furniture Ltd., Inc.**

v.

**WESTINGHOUSE ELECTRIC CORPORATION.**

Civ. A. No. 84–5745.
Misc. No. 85–0624.
Bankruptcy No. 85–01241K.

United States District Court, E.D. Pennsylvania.

April 3, 1986.

John E. McKeever, Philadelphia, Pa., for plaintiff.

S. Gordon Elkins, Stradley, Ronon, Stevens and Young, Philadelphia, Pa., for defendant.

### MEMORANDUM OF DECISION

McGLYNN, District Judge.

In this bankruptcy action, plaintiff, Enviro-Scope Corporation ("Enviro-Scope"), seeks the return of commissions withheld by defendant, Westinghouse Electric Corporation ("Westinghouse"), both prior and subsequent to plaintiff's initiation of Chapter 11 proceedings. Presently before the court is plaintiff's motion for partial summary judgment and defendant's cross motion for summary judgment with respect to Count III of the complaint which seeks to recover commissions withheld by Westinghouse subsequent to the bankruptcy filing. Plaintiff contends that Westinghouse's actions violate the setoff provisions of § 553 of the Bankruptcy Code. In response, Westinghouse contends that the money was properly withheld as a "recoupment" not subject to the provisions of § 553. For the reasons that follow, I find that the actions taken by Westinghouse amounted to a setoff in violation of § 553. I will,

20

however, deny plaintiff's motion for partial summary judgment because the amount involved has yet to be determined.

## I

During 1983 and 1984, Enviro-Scope sold office dividers, equipment and furniture as a dealer for Westinghouse. Under this arrangement, Enviro-Scope billed its customers directly and, in turn was billed by Westinghouse. Enviro-Scope, however, became delinquent in its payments to Westinghouse to the extent that as of July 31, 1984, it owed Westinghouse $503,327.20. Recognizing Enviro-Scope's precarious financial condition, Westinghouse advised Enviro-Scope that it would no longer continue their relationship in its traditional form. Instead, effective August 1, 1984, Westinghouse required that Enviro-Scope thereafter act as sales agent whereby Westinghouse would sell the products directly to Enviro-Scope's customers, bill the customers directly and pay a commission to Enviro-Scope.[1] Westinghouse then applied the commissions earned by Enviro-Scope to reduce Enviro-Scope's outstanding debt with Westinghouse.

On April 1, 1985, Enviro-Scope filed a Chapter 11 bankruptcy petition. Subsequent to that date, Enviro-Scope continued to earn commissions and Westinghouse continued to apply these post petition commissions as a setoff against the balance still due and owing. Eventually the debt was extinguished in this manner and on December 18, 1985, Westinghouse paid Enviro-Scope $118,610.51, representing the credit balance due Enviro-Scope as of November 30, 1985.[2]

On July 30, 1985, Enviro-Scope instituted this action against Westinghouse by filing an adversary complaint against Westinghouse in the bankruptcy proceeding. On Motion of Westinghouse, this action was withdrawn from the bankruptcy court to be heard and determined by this Court.

## II

■ Section 553 of the Bankruptcy Code permits the setoff of certain mutual debts in a bankruptcy proceeding. In effect, setoff elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor. *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984). It is clear, however, that a creditor may not setoff its pre-petition claims against a post-petition obligation. *Cooper-Jarrett, Inc. v. Central Transport, Inc.*, 726 F.2d 93, 96 (3d Cir.1984). To permit otherwise would violate "the prime bankruptcy policy of equality of distribution among all creditors of the debtor." *In re Hughs*, 704 F.2d 820, 822 (5th Cir.1983), *quoting*, H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 178 (1977), reprinted in, 5 U.S. Code Cong. & Admin. News 5787, 6138 (1978).

■ Westinghouse contends that its action is properly characterized as a "recoupment." The right to recoupment, unlike the right to setoff is unaffected by bankruptcy. Specifically, in the case of recoupment, there is no prohibition against applying post-petition payments due to the debtor to reduce a pre-petition debt owed by the debtor. *See, e.g., Brooks Shoe Mfg. Co., Inc. v. United Telephone Co.*, 39 B.R. 980, 982 (E.D.Pa.1984); *In re Midwest Service & Supply Co., Inc.*, 44 B.R. 262, 264–65 (D. Utah 1983).

---

**1.** Westinghouse asserts that such action was contemplated by the dealership agreement originally entered into by the parties. Enviro-Scope strongly disagrees with this assertion stating that the new sales arrangement was merely thrust upon it by Westinghouse's superior bargaining position. I find it unnecessary to resolve this dispute for the present purposes because I find Westinghouse's actions to be improper even if they were pursuant to the original contract.

**2.** Enviro-Scope originally moved for partial summary judgment with respect to Counts I and III. Count I requested commissions Enviro-Scope alleged it was due over and above the setoff taken by Westinghouse. In light of Westinghouse's payment of $118,610.51, Enviro-Scope has withdrawn its motion as to Count I.

■ The determination of whether an action will be characterized either as a setoff or as a recoupment depends on whether the reciprocal obligations arose from the same transaction or series of transactions.

> Under the legal and equitable principles of setoff, ... the mutual debt and claim contemplated are generally those arising from *different* transactions....
>
> Recoupment, on the other hand, is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.

4 L. King, Collier on Bankruptcy § 553.03 (15th Ed.) (footnotes omitted). The justification for the recoupment doctrine is that "it is essentially a defense to a debtor's claim rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *Lee v. Schweiker*, 739 F.2d at 875, *citing In re Manongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir.1944).

A paradigm case involving recoupment was presented in *In re Clowards, Inc.*, 42 B.R. 627 (Bankr. D. Idaho 1984), where the bankruptcy trustee of a subcontractor sued a general contractor to recover the full amount of the contract balance due under a contract between the general contractor and the subcontractor. The trustee further contended that the general contractor's claim against the subcontractor for breach of contract should be relegated to the status of an unsecured claim. The court concluded that both claims arose out of the same transaction and, thus, found that the doctrine of recoupment permitted the general contractor to withhold the balance due on the contract.

The recoupment doctrine has been extended in a number of cases involving health care providers to allow

> insurers to "recoup overpayments from amounts owed to the debtor post-petition, under contract providing for such recoupment. *See In re Monsour Medical Center*, 11 B.R. 1014 (W.D. Pa. 1981); *In re Yonkers Hamilton Sanitarium*, 22

B.R. 427 (Bankr. S.D.N.Y. 1982); *In re Berger*, 16 B.R. 236 (Bankr. S.D. Fla. 1981). *But cf. In re Dartmouth House Nursing Home*, 24 B.R. 256 (Bankr. D. Mass. 1982), *app. dismissed*, 30 B.R. 56 (Bankr. App. 1st Cir.1983) (appeal dismissed on jurisdictional grounds). These contracts provided for advance payment to providers based on estimates of the amount which would ultimately be owed, subject to later correction. The analysis used in these cases is based on the treatment of executory contracts in bankruptcy; a debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of "recoupment").

Although this prepayment argument is appealing, it is not clear how this situation should differ from many of the typical situations presented in bankruptcy where the debtor has received the benefit of a contract but is discharged from his obligations thereunder. In any event, it is unnecessary to reconcile this incongruity because the present case does not resemble the situation presented in the insurance recoupment cases; Westinghouse has not provided advance payments to Enviro-Scope.

Here, the reciprocal obligations of the parties clearly arose from different transactions. "The fact that the same two parties are involved, and that a similar subject matter gave rise to both claims, ... does not mean that the two arose from 'the same transaction.'" *Lee v. Schweiker*, 739 F.2d at 875.

■ Westinghouse contends that the alteration in the selling arrangement to one of direct sales-commission was made pursuant to the terms of the original contract between the parties. Westinghouse further contends that because the parties' relationship was governed by one contract, it follows that all claims must have arisen out of the same series of transactions thereby permitting recoupment. I need not decide whether the change in the selling arrangement was pursuant to the original contract

because I disagree with defendant's premise. While it is true that "the recoupment doctrine has been applied primarily where the creditor's claim against the debtor and the debtor's claim against the creditor arise out of the same contract," *Lee v. Schweiker*, 739 F.2d at 875, it does not necessarily follow that every contract contemplates only one series of transactions. The indebtedness existing from Enviro-Scope to Westinghouse as of August 1, 1984, arose under a relationship whereby Westinghouse sold goods directly to Enviro-Scope. The reciprocal obligations prior to August 1, 1984, were fixed at that time and unalterable. Westinghouse had fully performed its obligations under the contract and all that remained was for Enviro-Scope to pay for the goods sold and delivered. Had the parties terminated their relationship at that time, no adjustments in the form of setoffs or recoupments, would have been possible. Westinghouse admitted as much in its cross motion for summary judgment when it stated:

> In July of 1984, Westinghouse could have terminated Enviro-Scope's dealership and insisted on full payment of the amount then due ($503,327.70) with no other benefit to Enviro-Scope. Instead, Westinghouse continued to do business with Enviro-Scope so that Enviro-Scope could earn commissions that would reduce its debt and improve its financial position.

Brief of Westinghouse at 13.

Had Westinghouse chosen the former option and terminated the agreement, the amount owed Westinghouse would have been discharged in a subsequent bankruptcy. This result should not differ merely because Westinghouse permitted Enviro-Scope to continue operating on a sales-commission basis. Although Enviro-Scope benefitted from this latter arrangement, Westinghouse had nothing to lose. It provided no further credit to Enviro-Scope while still maintaining a sales force. It would be improper to permit Westinghouse to alter the dealership arrangement so as to create an indebtedness to Enviro-Scope in order to create a fund to charge against a pre-existing obligation of Enviro-Scope to Westinghouse and thus obtain preference over other unsecured creditors. Accordingly, I find that the parties have engaged in more than one series of transactions and, thus, I will deny Westinghouse's cross motion for summary judgment on Count III of plaintiff's complaint.

### III

Although I find that Westinghouse's retention of post-petition credits earned by Enviro-Scope was an improper setoff rather than a recoupment, Enviro-Scope is not entitled to partial summary judgment because such judgment will not be dispositive of Count III.

Enviro-Scope originally sought judgment on Count III in the amount of $285,844.45. Complaint, Exhibit C. In its motion for partial summary judgment, Enviro-Scope asserts that it is entitled to at least $282,291.54, with "Plaintiff's entitlement to additional sums on Count III of the Complaint being left until trial." Motion for Partial Summary Judgment, ¶ 15. Finally, in its brief in support of its motion, Enviro-Scope requests judgment on Count III in the amount of $163,681.03 ($282,291.54 less $118,610.51 already paid by Westinghouse), but then states that "Enviro-Scope is now entitled under Count III to an amount that is in excess of the $285,844.45 originally sought under Count III of the Complaint. Accordingly, Enviro-Scope will be seeking leave to amend its Complaint to reflect the amount now due and owing under the Count." Brief of Enviro-Scope at 10 n. 5.

Partial summary judgment may not be invoked to dispose of only part of a single claim. *See, e.g., RePass v. Vreeland*, 357 F.2d 801, 805 (3d Cir.1966); *Marino v. Nevitt*, 311 F.2d 406, (3d Cir.1963); *Coffman v. Federal Laboratories, Inc.*, 171 F.2d 94, 97–98 (3d Cir.1948), *cert. denied*, 336 U.S. 913, 69 S.Ct. 603, 93 L.Ed. 1076 (1949). Accordingly, Enviro-Scope's

motion for partial summary judgment with respect to Count III will be denied.[3]

---

3. In the consolidated case of *Westinghouse Electric Corporation v. Fidelity and Deposit Company of Maryland,* 63 B.R. 18, Westinghouse has moved for partial summary judgment against Fidelity. Fidelity issued a payment bond in the amount of $250,000, covering Enviro-Scope's obligations to Westinghouse. Thus, Westinghouse moves that if partial summary judgment is grant-ed in favor of Enviro-Scope in Count III, that Westinghouse be granted partial summary judgment for that amount against Fidelity. Because I have denied Enviro-Scope's motion for partial summary judgment, I will deny as moot, Westinghouse's motion for summary judgment against Fidelity.