**In re George HILER, Debtor.**

**The LONG TERM DISABILITY PLAN OF HOFFMAN–La ROCHE, INC., Plaintiff,**

**v.**

**George HILER and Jeffrey A. Lester, Interim Trustee, Defendants.**

**Bankruptcy No. 88–02871.
Adv. No. 88–0659.**

United States Bankruptcy Court,
D. New Jersey.

April 10, 1989.

Crummy, Del Deo, Dolan, Griffinger & Vecchione, by Frank Vecchione, and Deborah Tanenbaum, Newark, N.J., for plaintiff.

Andrew T. Shaw, Randolph, N.J., for defendant/debtor.

## OPINION

VINCENT J. COMMISA, Chief Judge.

This matter comes before the Court in the context of an adversary proceeding brought by the Long Term Disability Plan of Hoffman–LaRoche ("the Plan" or "the Plaintiff") seeking, *inter alia*, a determination that the Plan has a valid right of recoupment against the Debtor, not subject to the automatic stay, and that the indebtedness of the Debtor to the Plan be declared nondischargeable. The Court now considers the Plaintiff's Motion for Summary Judgment on these issues.[1] This Opinion shall constitute the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

The Debtor, George Hiler, ("Hiler"), is a beneficiary under the Plan, an employee benefit plan created pursuant to the Em-

---

1. This Opinion addresses the Plaintiff's motion for Partial Summary Judgment seeking declaratory relief on Count One of its Adversary Complaint only. The Complaint embodies three counts, summarized as follows:

   Count One—Alleges a valid right of recoupment from future benefits payable to the Debtor that is not subject to the automatic stay and non-dischargeable.

   Count Two—Alleges that the aforementioned right of recoupment is non-dischargeable pursuant to Sec. 523(a)(2)(B).

   Count Three—Alleges that the aforementioned right of recoupment is non-dischargeable pursuant to Sec. 523(a)(2)(A).

ployee Retirement Income Security Act of 1974 ("ERISA"). On or about February 2, 1981, Hiler became "totally disabled," as that term is defined in the Plan, and thus became entitled to disability benefits from the Plan.

According to the provisions of the Plan, covered members are entitled to receive sixty per cent (60%) of their basic monthly income ("Gross Disability Income") for the duration of qualified periods of disability. However, the Plan does not provide that the Plan itself is solely responsible for the obligation to pay the Gross Disability Income; rather, the Plan is designed to ensure that the beneficiary receives an amount equal to the Gross Disability Income, with contributions from all possible sources being considered. The other sources include, *inter alia*, Social Security disability benefits. Thus, the Gross Disability Income is reduced by the sum of the other benefits received to arrive at the "Net Benefits" payable.

Until a covered member's entitlement to Social Security disability benefits is finally determined, an estimated amount is used for the calculation of Net Benefits payable under the Plan. Upon receipt of a final determination, the amount paid as Net Benefits up to that point is adjusted to reflect the difference between the estimated amount of Social Security disability benefits and the actual amount of the award. Hiler's Gross Disability Income, in the amount of $1225.50, was effective February 2, 1982. The estimated amount of Social Security disability benefits attributed to Hiler was $593.00 per month. Thus, after deduction of this amount, the Plan paid the debtor monthly Net Benefits in the amount of $632.50.

On May 10, 1982, before he had received a final determination from Social Security, and before he began receiving any Social Security Disability payments, Hiler requested that the Plan stop deducting the amount of the estimated Social Security disability benefits from his Gross Disability Income. Although the Plan granted this request, it was stipulated that there would be no change with regard to the effect of a favorable decision from Social Security. Therefore, if Hiler were to receive Social Security disability benefits in the future, the entire amount of the award would be deducted from his Gross Disability Income. In return, Hiler agreed to repay the Plan any and all benefits he would receive from Social Security in the event of a favorable decision, and agreed to notify the Plan of any subsequent Social Security determinations. Hiler and the Plan administrators memorialized the same in reimbursement agreements dated September 21, 1982 and April 29, 1983.

Hiler proceeded to collect the Gross Disability Income, in the monthly amount of $1225.50, without deductions. The Plan Administration, on several occasions, reminded the debtor of his agreement to repay, and demanded that he submit Social Security status reports. Hiler made a third application to Social Security in March of 1984. In May of that same year, the Debtor received a notice from Social Security advising him that he had met half of the requirements for eligibility and that a favorable decision was contingent upon his meeting the second half of the requirements. Hiler forwarded a copy of said notice to the Plan Administration to inform them that he was waiting for yet a second notice in July of 1984. Hiler met the second half of the requirements and received a favorable decision which was effective in December, 1986. The award was for $636.00 per month retroactive to March, 1983. Hiler never notified the Plan of this award. Since the Plan was never notified, it continued to pay Hiler his Gross Disability Income of $1225.50 without deductions, and he continued to accept and cash checks.

The Plan learned of Hiler's award in September of 1987, when it received notice of the same directly from the Social Security Administration. An immediate recalculation of Hiler's monthly payments was performed by the Plan to adjust Hiler's Gross Disability Income payment to reflect his monthly Social Security Disability award of $636.00. The Plan then advised Hiler of the adjustment and requested repayment of $34,980.00, the sum of all the

amounts Hiler had received from Social Security which had not been deducted by the Plan.

Upon Hiler's failure to repay the Plan any part of the amount owed, in October of 1987, the Plan began to recoup the overpayment balance due out of Hiler's monthly Net Benefits at the rate of $589.50 per month. In effect, the Plan was no longer sending Hiler a check, but rather was applying the Net Benefits towards Hiler's debt. These actions, taken in an effort to recoup the amount due, were expressly allowed under the terms of the Plan.

On April 28, 1988 ("Filing Date") Hiler filed a voluntary petition in bankruptcy under Chapter 7 of the Bankruptcy Code. Since the filing date, the Plan has continued to deduct the overpayment balance due from the Net Benefits which would otherwise be payable to Hiler under the Plan. The Plan, the plaintiff herein, contends that it has a valid right of recoupment not subject to the automatic stay provisions of 11 U.S.C. § 362. The plaintiff, in its motion for summary judgment, seeks declaratory relief affirming the validity of its position since it is continuing in the exercise of its express right of recoupment under the Plan. The debtor, in his responding papers, contends that the plaintiff should be estopped from exercising that right, based on his allegation that Hoffman–LaRoche, Inc.'s conduct in compelling the debtor to return to work when he was still in poor health, caused him to suffer further emotional distress.

In deciding a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c), made applicable by rule 7056 of the Bankruptcy Rules. *In re Heafitz*, 85 B.R. 274, 278 (Bkrtcy.S.D.N.Y.1988). In making such determination, the Court must look to "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any...." Fed.R.Civ.P. 56(c). If, after such examination, there is no genuine issue as to any material fact the moving party will be entitled to judgment as a matter of law. *Id.* Fed.R.Civ.P. 56(c). In the case

at bar, the Debtor, relying on the plaintiff's Statement of Facts, does not allege any factual dispute with regard to any essential element of his case. This Court finds that there is no dispute as to material facts, only as to the legal conclusions to be drawn from them. Therefore, the Plaintiff is entitled to judgment on the first count of the complaint as a matter of law.

The substantive issues to be addressed are whether the Plan has a valid right of recoupment against the debtor, and if so, whether that right is subject to the automatic stay and nondischargeable. The issues arise because the doctrine of recoupment is very similar to the doctrine of setoff, whose application is expressly subject to the automatic stay pursuant to 11 U.S.C. § 362(a)(7), and further limited by § 553, which disallows the setoff of pre-petition claims against post-petition earnings. Both doctrines permit the adjudication of countervailing claims in one suit when the case is based on any one of them. *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984) (Footnote omitted); *In Re Klingberg Schools*, 68 B.R. 173, 178 (N.D.Ill. 1986). Setoff involves a mutuality of obligation which arises from separate transactions. *In Re Heafitz*, 85 B.R. 274, 278 (Bkrtcy.S.D.N.Y.1988) (citations omitted). Recoupment, on the other hand, does not require a mutuality of obligation, but rather countervailing claims or demands arising out of the same transaction under which the initial claim was asserted. *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 432 (Bkrtcy.S.D.N.Y.1982) (citation omitted). Essentially, the distinction between the two doctrines is whether the claim arises out of the same or different transactions. *Lee, supra,* 739 F.2d at 875; *Klingberg, supra,* 68 B.R. at 178; *Yonkers, supra,* 22 B.R. at 432; *Heafitz, supra,* 85 B.R. at 278; *In re Maine,* 32 B.R. 452, 455 (Bkrtcy.W.D.N.Y.1983); *Westinghouse Electric Corp. v. Fidelity Deposit Co. of Maryland,* 63 B.R. 18, 21 (E.D.Pa.1986); *In re American Central Airlines, Inc.,* 60 B.R. 587, 590 (Bkrtcy.N.D.Iowa, 1986); *In re Clowards, Inc.,* 42 B.R. 627, 628 (Bkrtcy.D.Idaho 1984); *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262, 266

(D.Utah 1983). Thus, where a claim arises from the same transaction, the proper characterization of the action is recoupment.

■ In the instant matter, the plaintiff's claim for reimbursement for overpayment stems from the same contract under which the debtor asserts a claim, *i.e.*, the Plan. Hiler is entitled to disability benefits from the Plan. Such entitlement is specifically governed by the Plan, pursuant to which Hiler would be entitled to receive 60% of his basic monthly income, reduced by all sums which he would be entitled to under the Social Security Act if and when his application was approved. Moreover, the debtor signed two reimbursement agreements, which effectuated the Plan's right to reimbursement under Section 5.3 of the Plan,[2] in which he promised to repay the Plan for all sums he retroactively received from Social Security. Now the Debtor claims a right to continued benefits, yet he seeks to have discharged in bankruptcy the amount he received from Social Security in retroactive benefits which he promised to repay the Plan. Conversely, the Plaintiff seeks to continue deducting the amount the Debtor promised to repay from the benefits it continues to owe the Debtor, pursuant to the Plan. Therefore, this Court finds that all the claims arise out of the same contract and that the plaintiff clearly has a valid right of recoupment against the debtor.

Although recoupments are not specifically referred to in § 362(a), some courts have held that they should, as setoffs, be subject to the automatic stay. *In re Heafitz*, 85 B.R. at 280; *In re Klingberg*, 68 B.R. at 178; *In re Ohning*, 57 B.R. 714, 716–717 (Bankr.N.D.Ind.1986); *In re Newport Offshore, Ltd.*, 88 B.R. 566, 569 (Bkrtcy.D.R.I. 1988). The rationale for such holdings has been based on Congressional intent behind the automatic stay. This is seen in *In re Klingberg*, where the District Court for the Northern District of Illinois noted:

> Although we do not decide this issue, it would seem that recoupment should be subject to the stay because the purpose of the automatic stay is to give "the debtor a breathing spell from his creditors" and to permit the debtor to attempt a repayment or reorganization plan, or simply "to be relieved of the financial pressures that drove him into bankruptcy" without the specter of his creditors breathing down his neck. S.Rep.No. 989, 95th Cong., 2d Sess. (1978), 1978 U.S. Code Cong. & Admin.News 5787. Even though the Bankruptcy Code provides a limited exception to the discharge of all debts for certain setoffs under 11 U.S.C. § 553, the automatic stay applies to such setoffs, and a creditor may not setoff the debt without leave of the court under Section 362. The same reasoning which makes all setoffs subject to the automatic stay provisions should apply to recoupments.

*In re Klingberg, supra,* at 178, footnote 3.

The courts that have followed this reasoning and applied the limitations on setoff to recoupment have done so because the two doctrines appear to be quite similar. This Court is convinced, however, that beyond their common origin and equitable nature, the two doctrines part company and have very different effects when applied in bankruptcy. In light of the fact that application of each doctrine produces very separate results, the Court finds that it would be inequitable to apply to recoupment the limitations which operate on setoff in bankruptcy. *Lee v. Schweiker, supra,* 739 F.2d at 875 (citing *In re Monongahela Rye Liquors,* 141 F.2d at 869 (3rd Cir.1944));

**2.** Section 5.3 of the Plan provides as follows:
*Repayment of Social Security Advance*
In the event that a Member's application for any primary disability benefits under the Federal Social Security Act is approved at any time and such Social Security benefits are awarded retroactively to a Member for any period with respect to which Plan benefits unreduced by such Social Security benefits were paid, the Member shall immediately repay to the Plan an amount equal to the total gross amount (including any attorney's fees payable from such amount to the claimant's attorney) of such Social Security benefits awarded to the Member with respect to such period. In addition, any benefits otherwise payable under this Plan, after such award, shall be withheld and applied against the balance, if any, of such award that has not been repaid to the Plan by the member in accordance with the previous sentence.

*Westinghouse Elec. Corp. v. Fidelity & Deposit Co.,* 63 B.R. 18, 21 (citation omitted).

In the case of *In re American Central Airlines, Inc.,* 60 B.R. 587 (1986), the Bankruptcy Court for the Northern District of Iowa examined the effects of each of these doctrines in bankruptcy. As a result of its analysis, the *American* court held that recoupment does not have the same effect as setoff, and thus, should not be subject to the same limitations. The *American* court first noted that generally, under setoff, the mutual debt and claim arise from different transactions. *American Central,* 60 B.R. at 590. It is usually applied for the purpose of reducing or extinguishing a creditor's claim against a debtor. *Id.* However, the doctrine also provides that the debtor "may be entitled to a judgment in his favor for any excess over and above creditor's claim against debtor." *Id.,* (citing 4 Collier on Bankruptcy, § 553.03 (15th Edition, 1984)). Such a judgment entitling the creditor to an amount greater than the debtor's claim would affect property of the estate other than the subject claim.

The application of the doctrine of setoff affects priorities in bankruptcy also. "A claimant who properly invokes setoff under § 553 in effect elevates an unsecured claim to a secured position to the extent that debtor has a mutual, prepetition claim against creditor thereby receiving a permissible preference over other creditors." *American Central,* 60 B.R. at 590. *See* 11 U.S.C. § 506(a).

Finally, timing is an issue when setoff is applied. To set off a claim after the bankruptcy petition has been filed, a creditor must meet the limits set forth in § 553 and must seek relief from the automatic stay.

[T]he requirement of mutuality is of particular significance after the filing of a petition in bankruptcy. Because of the distinction between debtor and debtor-in-possession under the Bankruptcy Code, the majority of courts have concluded that the requisite element of mutuality of parties is lacking whenever a creditor attempts to offset a pre-petition debt against a post-petition debt. *American Central,* 60 B.R. at 590.

In a comparison based on the elements set forth above, the doctrine of recoupment can clearly be distinguished from setoff in a bankruptcy setting. It has no greater effect than a defense to a claim, and hence should not be subject to the limitations on setoff. A recoupment claim arises out of the same transaction that forms the basis of the plaintiff's cause of action. Its function is to reduce the amount demanded, but only to the extent of the plaintiff's claim. *Id.* "In other words, recoupment goes to the justice of plaintiff's claim and no affirmative judgment for any excess over the claim of plaintiff can be awarded thereon." *Id.* (citing 20 Am.Jur.2d, Counterclaims, Recoupment & Setoff, § 22 and § 12). Therefore, allowing recoupment will not affect property of the estate other than the subject claim.

Furthermore, the invocation of the recoupment doctrine promotes no preference problem. It is applied when there are countervailing claims arising from the same transaction "strictly for the purpose of abatement or reduction...." *American Central,* 60 B.R. at 590. (citing 4 Collier on Bankruptcy, § 553.03 (15th Edition 1984)). In effect, the application of recoupment goes to the equity of the claim. It provides for the adjudication of the just apportionment of liability relative to a dispute regarding a singular transaction.

A majority of bankruptcy courts have, as did the *American* court, allowed creditors to recoup amounts owed by the debtor for pre-petition debts from payments to debtor for post-petition earnings. Fundamentally, these courts have found support for their decisions in two theories. The first of these is an application of the concept of executory contracts in bankruptcy to determine that a debtor cannot accept the benefits of a contract without also accepting the intrinsic burdens. Under the second theory, courts have found that the interest of a creditor asserting a valid right of recoupment is not property of the debtor's estate.

█ Typically, recoupment is applicable in a situation involving a single contract

which "provides for advance payments based on estimates of what ultimately would be owed, subject to later correction...." *American Central, supra,* at 591. Under such circumstances, courts have applied the rule that a debtor must accept the burdens of the contract if he wants to continue to receive the benefits of it. *Id.; Westinghouse Elec. Corp. v. Fidelity & Deposit Co.,* 63 B.R. 18, 21–22 (E.D. Pa.1986); *In re Midwest Service and Supply Co., Inc.,* 44 B.R. 262, 265 (D.C.1983); *In re Alpco, Inc.,* 62 B.R. 184, 188 (Bkrtcy. S.D.Ohio 1986); *In re Monsour Medical Center,* 11 B.R. 1014, 1018 (1981); *In re Maine,* 32 B.R. 452, 455 (Bankr.W.D.N.Y. 1983); *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y. 1982), *aff'd,* 34 B.R. 385, 388 (S.D.N.Y. 1983); *In re B & L Oil Co.,* 782 F.2d 155, 159 (10th Cir.1986). Thus, in the case where overpayments are made under a contract which provides for recoupment prior to the filing of a bankruptcy petition, the debtor should not be allowed to avoid the burden of reimbursement of such sums by having them discharged in bankruptcy while he continues to receive the benefits under the same contract. A debtor simply may not assume part of an agreement and reject another. Moreover, in *Lee v. Schweiker,* 739 F.2d 870 (3rd Cir.1984), in which debtor brought suit against the Social Security Administration for the return of monies withheld by it as a result of previous overpayments, the Third Circuit expressly recognized the right of recoupment in bankruptcy on the executory contract theory. The Court noted that:

The analysis used ... is based on the treatment of executory contracts in bankruptcy: a debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition over-payments by means of recoupment).

*Lee,* 739 F.2d at 876.

■ In the case at bar, Hiler has claimed a continued right to receive benefits under the Plan. If he is to continue to receive such benefits, he must also accept the burdens under the Plan. That is, the debtor cannot be relieved of the debt created by the pre-petition overpayments made to him by the Plan. Hiler agreed to repay any and all retroactive benefits he received from Social Security pursuant to both the Plan and the two reimbursement agreements. He now wants to be relieved of this obligation under the contract, yet continue to be entitled to receive the benefits. In effect, this would allow the debtor to "pick and choose" the provisions of the Plan he wishes to accept and reject. This Court, guided by both case law and equity, cannot grant such relief. If the debtor wants to assume a contract in bankruptcy, such as the Plan, he must do so subject to all its provisions and conditions.

The second theory relied on by courts which have held that the right of recoupment is unaffected by bankruptcy is founded in 11 U.S.C. § 541(a)(1), pursuant to which the estate can have no greater right in property than the debtor had. Applied here, to the extent that a debtor's claim to property is subject to a creditor's valid right of recoupment, that property is not property of the estate. Thus, a creditor's right of recoupment will survive discharge. *In re Maine, supra,* 32 B.R. at 455. This theory was used in further support of the *American* holding which permitted recoupment without the limitations imposed by § 362 or § 553. The court stated:

At the commencement of this Chapter 11 proceeding, the overpayments received by debtor become property of the estate subject, however, to the superior claim of DOT since debtor was not entitled to receive or retain these overpayments. Likewise, debtor's right to receive post-petition subsidy payments were subject to DOT's right to recoup the amounts overpaid pre-petition; therefore, the interest that the bankruptcy estate acquired in the post-petition subsidy payments is subject to DOT's right to recoup.

*American Central, supra,* 60 B.R. at 592.

In the instant matter, Hiler's claim to a right of future benefits as property of the estate is subject to the Plan's right of recoupment. To allow the Debtor to side-

step the Plan's right would unjustly enrich Hiler's estate as well as provide a windfall to all the other creditors at the expense of the Plan. Discharge in bankruptcy is intended to provide a debtor with a fresh start, not a head start. If Hiler were permitted to have the overpayments made to him by the Plan discharged in bankruptcy, he would be retaining property that was never his, and in effect, be getting a head start. To avoid such a result, Hiler's claim to future benefits as property of the estate is subject to the Plan's valid right of recoupment. Thus, to the extent that the Plan's right to recoupment is not property of the estate, the dollar value of that right is non-dischargeable.

■ Therefore, the Court finds that the Plan has a valid right of recoupment with regard to the overpayments made to the Debtor, and that such right is not subject to the automatic stay. Additionally, in consonance with the theories discussed above, the Court finds that the debt created by the overpayments is not dischargeable.

Accordingly, the Court will grant the Plan's Motion for Partial Summary Judgment.

Submit the appropriate Order within ten (10) days of the date hereof.