In re Lynda Allycia POWELL, Debtor.

Lynda Allycia Powell, Plaintiff,

v.

FELRA and UFCW Health and Welfare Fund, Defendants.

Bankruptcy No. 00–6–3092–SD.
Adversary No. 01–5488–SD.

United States Bankruptcy Court, D. Maryland, at Baltimore.

Oct. 11, 2002.

David W. Cohen, Baltimore, MD, for debtor.

Marc A. Tenenbaum, Slevin & Hart, P.C., Washington, DC, for defendant.

Deborah Hunt Devan, Neuberger, Quinn, Gielen, Rubin & Gibber, P.A., Baltimore, MD, Chapter 7 Trustee.

### MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEPHEN E. DERBY, Bankruptcy Judge.

The controlling issue raised by Defendant's motion for summary judgment and Plaintiff Debtor's cross-motion for partial summary judgment is whether the actions of Defendant constitute a permissible recoupment or an impermissible setoff. In her complaint the Plaintiff Debtor seeks an order finding the Defendant Health and Welfare Fund in contempt for violating Debtor's Chapter 7 discharge injunction. 11 U.S.C. § 524(a). As the parties agree, there is no genuine issue of material fact. Consequently, resolution of this proceeding by summary judgment is appropriate.

For the reasons set forth below, Plaintiff's motion for partial summary judgment will be denied and Defendant's motion for summary judgment will be granted.

### Background

Plaintiff Debtor is employed at Safeway Supermarkets. One of the benefits she receives by virtue of her employment is participation in the Defendant FELRA and UFCW Health and Welfare Fund (the "Fund"). The Fund is a multi-employer,

employee welfare benefit plan as defined by the Employee Retirement Income Security Act of 1974 (ERISA). 29 U.S.C. §§ 1002(1), (37). It is a result of collective bargaining between certain unions and employers. The collective bargaining agreements require employers to contribute a certain amount to the Fund each month for each covered employee. Employees who participate in the Fund receive hospital, surgical, medical, accident and sickness benefits, as well as dental, optical, and prescription drug benefits.

On November 19, 1999, Plaintiff was injured in an automobile accident. The Fund advanced $684.02 to Plaintiff, consisting of $257.38 in medical benefits and $426.64 in accident and sickness benefits. Under the SUBROGATION clause of the benefit plan, Plaintiff was required to reimburse the Fund for the advances to the extent she received recovery from another source for her accident. If Plaintiff failed to reimburse the Fund, it had the right to recover the amount paid "by methods which include offsetting it against future benefit payments, if necessary." Summary Plan Description, Decl. of Laura Walsh, Exh. A, p. 35.

At some point prepetition, Plaintiff received a settlement recovery for her accident from a third party. However, she did not reimburse the advances to the Fund.

On October 19, 2000, the plaintiff filed a petition under Chapter 7. The Fund received notice of Plaintiff's bankruptcy petition as a scheduled creditor. It raised no issues during administration of Plaintiff's case, and Plaintiff's Discharge was entered on February 5, 2001. In May, 2001, the Fund withheld payment of certain health and prescription benefits that Plaintiff was otherwise entitled to receive, and it applied them to reduce Plaintiff's prepetition reimbursement obligation. Plaintiff argues that the Fund's actions violated her Discharge.

### Summary Judgment Standard

Pursuant to Fed.R.Civ.P. 56(c), made applicable by Bankruptcy Rule 7056, summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Ramsey v. Bernstein (In re Bernstein),* 197 B.R. 475 (Bankr.D.Md.1996), *aff'd* 113 F.3d 1231 (4th Cir.1997). Since the parties agree on the material facts, it is appropriate to determine whether one party is entitled to judgment as a matter of law.

### Contempt for Knowingly Violating the Discharge Order

Plaintiff's first count alleges that Defendant willfully violated her Discharge Order and the injunction provisions of 11 U.S.C. § 524(a)[1] when Defendant withheld payment of benefits to which Plaintiff was entitled for application to a discharged debt.

■ Although Defendant Fund admits it withheld benefit payments from Plaintiff, it denies that it violated Plaintiff's Discharge. Rather, the Fund contends that it exercised its equitable right of recoupment. If the Fund is correct, it did not

---

1. Section 524(a) provides in relevant part that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset any such debt [that has been discharged under § 727] as a personal liability of the debtor, whether or not discharge of such debt is waived; ..." 11 U.S.C. § 524(a)(2).

violate the Discharge Order because recoupment is not prohibited by the discharge injunction. *Thompson v. Board of Trustees of the Fairfax Co. Police Officers Retirement Sys. (In re Thompson)*, 182 B.R. 140, 146 (Bankr.E.D.Va.1995). Plaintiff however, asserts that the withholding of payments by the Fund amounted to a setoff. Setoff is prohibited under 11 U.S.C. § 524(a)(2). *Id.* Therefore, the issue presented is whether the Fund's refusal to pay benefits to Plaintiff post-petition amounts to recoupment or to setoff where the Plaintiff had contractually agreed to reimburse the Fund after receiving monies from a third party, and she failed to do so pre-petition.

■ Setoff arises "from an independent claim the defendant has against the plaintiff." *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d 308, 310 n. 1 (4th Cir.1982). As described by the Supreme Court in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995): "The right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" Quoting *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 57 L.Ed. 1313 (1913). Setoff is subject to the automatic stay. 11 U.S.C. § 362(a)(7). Only when both opposing claims arise prepetition is a creditor's right of setoff [offset] specifically recognized under the Bankruptcy Code. *Id.* at § 553(a).

■ "Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claims." *First Nat'l Bank of Louisville v. Master Auto Serv. Corp.*, 693 F.2d at 310 n. 1. This equitable doctrine is treated as a non-statutory exception to the

automatic stay in many courts. *Thompson*, 182 B.R. at 146–47; *Kosadnar v. Metropolitan Life Ins. Co.*, 157 F.3d 1011 (5th Cir.1998); *University Med. Ctr. v. Sullivan*, 973 F.2d 1065 (3rd Cir.1992); *Long Term Disability Plan of Hoffman–La-Roche, Inc. v. Hiler*, 99 B.R. 238 (Bankr. D.N.J.1989). Conceptually, however, the automatic stay is not applicable. A defendant is not required to seek judicial approval prior to recoupment because the "right of recoupment does not constitute a debt which is dischargeable." *Aetna Life Ins. Co. v. Bram*, 179 B.R. 824, 827 (Bankr.E.D.Tex.1995).

■ To cast withholding as recoupment the Fund must first establish an overpayment was made, and second, "both the creditor's claim and the amount owed to the debtor must arise from a single contract or transaction." *Kosadnar*, 157 F.3d at 1013. In this instance, there is no dispute that the first element is satisfied. Defendant Fund alleges, and Plaintiff acknowledges, that Plaintiff was advanced $684.02 on the premise that she would reimburse the Fund with monies received from a third party, which she did not. The second element is less apparent. It requires an analysis of what constitutes a single transaction. "There is no general standard governing whether events are part of the same or different transactions." *Kosadnar*, 157 F.3d at 1014. Rather, courts focus on the facts and the equities of each case. *Id.; see also, United States Postal Serv. v. Dewey Freight Sys. Inc.*, 31 F.3d 620, 623 (8th Cir.1994). At least two doctrines exist in determining whether events constitute the same transaction.

First, under the logical relationship test, the creditor and debtor's contractual relationship is determinate. This means "a 'transaction' may include 'a series of many occurrences, depending not so much upon the immediateness of their connection as

upon their logical relationship.' " *TLC Hospitals v. United States Dept. of Health and Human Servs.,* 224 F.3d 1008, 1012 (9th Cir.2000). In *TLC Hospitals,* the court held that pre-petition Medicare overpayments to the debtor, a nursing facility, in one fiscal year and Medicare underpayments for post-petition services in a subsequent fiscal year were part of one transaction. *Id.* The court reasoned that the protracted billing procedures on which the relationship was based indicated that the payments were logically related. It stated "while this exchange of funds may stretch over an extended period of time, it remains part of a continuous balancing process between the parties." *Id.* Under a logical relationship analysis, the word "transaction" is given a liberal and flexible construction. *Aetna U.S. Healthcare, Inc. v. Madigan,* 270 B.R. 749, 755 (9th Cir. BAP 2001).

Second, some courts find that a logical relationship alone is insufficient. *University Medical Ctr. v. Sullivan,* 973 F.2d 1065, 1081 (3rd Cir.1992). Even the *TLC Hospitals* court acknowledged that the logical relationship could not be applied so loosely that multiple occurrences in any continuous commercial relationship constitute one transaction. *Id.* at 1012. However, there are courts that simply do not employ a logical relationship test. Rather these courts subscribe to a narrow or circumscribed interpretation as to what defines the same transaction for the purposes of bankruptcy. *Malinowski v. New York State Dept. of Labor,* 156 F.3d 131, 133 (2nd Cir.1998); *University Medical Ctr. v. Sullivan,* 973 F.2d 1065, 1081 (3rd Cir.1992). The Third Circuit stated in *University Medical Center:*

> For the purposes of recoupment, a mere logical relationship is not enough: the fact that the same two parties are involved and that a similar subject matter gave rise to both claims, . . . does not

mean that the two arose from the 'same transaction.' Rather, both debts must arise out of a single integrated transaction so that it would inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.

*Id.* at 1081.

Applying this circumscribed definition of transaction, the court held the ongoing relationship between a Medicare provider and the Department of Health and Human Services was insufficient to conclude that overpayment in one year arose from the same transaction as withholding payments approximately three years later, after the Medicare provider had filed for bankruptcy protection. *Id.* The court rejected the doctrine of equitable recoupment to support the withheld payments. *Id.* Although *University Medical Center* and *TLC Hospitals* were factually similar, each court reached a different conclusion. "Under either standard, however, courts evaluate the equities of the case, the main difference between them being the degree of interconnectedness required with respect to the relevant obligations." *Madigan,* 270 B.R. at 756.

█ Plaintiff relies on *Malinowski* for support of its proposition that Defendant is not entitled to recoupment. In *Malinowski,* the debtor became unemployed in 1994 and received unemployment compensation based on an initial determination of eligibility made by the New York Department of Labor. The Department later determined the debtor had voluntarily quit without good cause and was thus ineligible, leaving an overpayment to the debtor in the amount of $2,072.00. *Malinowski,* 156 F.3d at 132. The following year the debtor filed a Chapter 13 case. In 1996, Malinowski again filed for unemployment. The Department had not filed a claim in the

bankruptcy case. Nevertheless, it withheld the $2,072.00 from the debtor's post-petition unemployment benefits without seeking relief or modification from the automatic stay. Using a narrow application of transaction, the *Malinowski* court held that the two unemployment compensation episodes did not constitute one transaction. *Id.* at 134. Rather, the court reasoned that the two claims for unemployment were based upon different episodes of unemployment because, for each episode of unemployment compensation, the claimant was required to qualify separately for benefits. *Id.* The facts in *Malinowski* are materially distinguishable from those in the instant proceeding.

Here, Plaintiff was eligible for benefits on a continuing basis. The Plan did not require her to requalify periodically to maintain her participation in the Plan. Rather, once she was "initially eligible, she became and remained a participant as long as she was employed by a participating employer making contributions on her behalf." *See,* FELRA and UFCW Health and Welfare Fund Plan, 1999, EMPLOYEE ELIGIBILITY, pp. 12–13.

The facts in *Brown v. General Motors Corp.,* 152 B.R. 935 (W.D.Wis.1993) provide a closer analogy. In *Brown,* the debtor became eligible prepetition to receive benefits under the employer's pension plan. Upon retirement, the debtor was entitled to receive a basic benefit until death. Debtor was also entitled to receive a temporary benefit. The debtor would become ineligible for the temporary benefit when he reached age 62 or when he received Social Security disability benefits, if earlier. A year after debtor's basic and temporary benefits commenced under the Plan, the debtor also began receiving Social Security disability benefits. He did not, however, inform the Plan. Once it learned of the receipt of the payments, and

after the debtor had filed a Chapter 7 bankruptcy case, the plan reduced his basic benefit by 50% to recoup the overpayment of temporary benefits. This was consistent with the plain language of the Plan. The court held that the overpayment in connection with the "private employee benefit plan gave rise to a valid right of recoupment against future benefits where such recoupment is available under the Plan or by agreement between the parties." *Brown,* 152 B.R. at 939. Consequently, the court held that the debtor's Chapter 7 discharge had "no effect on the continuing right of the Pension Plan to recoup overpayments from future benefits." *Id.*

Similarly, in *Hoffman–LaRoche v. Hiler,* 99 B.R. 238 (Bankr.D.N.J.1989), the debtor was a beneficiary under an employee benefit plan created pursuant to ERISA. The Plan allowed disability benefits to be paid monthly to the debtor. If he became eligible for social security benefits, the debtor was to reimburse the Plan for the disability benefits. As in the instant proceeding, the debtor in *Hiler* received benefits in anticipation of receiving payment from a third party. When Hiler received a delayed payment in social security disability benefits, however, he did not notify the Plan of the award. Once the Plan learned of the payment, it began withholding payments from the debtor to recover the overpayments. Debtor filed for bankruptcy. Without seeking permission from the Bankruptcy Court, the Plan continued to withhold payments. The *Hiler* court held there existed a valid right of recoupment that was subject neither to the automatic stay nor the to discharge. *Id.* at 245. The court reasoned that the Plan's claim for reimbursement of overpayments stemmed from the same contract under which the debtor asserted a claim. *Id.* at 240. The debtor in *Hiler* had signed a reimbursement agreement promising to repay the

Plan for sums retroactively received from Social Security.

The United States Court of Appeals for the Fifth Circuit found that a compensation plan where the debtor received part salary and part advance on sales commissions was deemed to be one transaction when the employer collected those advances postpetition, although the debts were created prepetition. *Kosadnar v. Metropolitan Life Ins. Co.*, 157 F.3d 1011, 1016 (5th Cir.1998). The *Kosadnar* court reasoned it was these "types of overpayments that the doctrine of recoupment contemplates." *Id.* at 1013. Citing *Hiler*, the court went on to find that "[w]hen all claims arise out of one contract between the parties, application of the recoupment doctrine is appropriate." *Id.*

Applying the more narrow, circumscribed definition of transaction to the present matter compels a finding of recoupment. Debtor received $684.02 as an advance for medical benefits and accident and sickness benefits. In exchange for receiving that advance, Debtor contractually agreed to repay the Fund from third party reimbursements. However, Debtor failed to reimburse the Fund, although she had received a third party recovery. Consequently, a contractual right arose in the Fund to recoup the overadvances from future benefits otherwise payable. There is a single contract that governed the relationship between Plaintiff and Defendant. The Defendant Fund's advances to Debtor and its recovery of those advances from future benefits arose from a single purpose relationship between the parties, namely, the provision of health benefits to Debtor without interruption, requalification, or a new contract. Neither the passage of less than 2 years from when Debtor's obligation to repay arose to the recoupment nor the intervention of the automatic stay Debtor's discharge in bankruptcy alters or breaks the singleness of the transaction.

Defendant's claim was not independent of its overadvances to Plaintiff.

■ "[W]here overpayments are made under a contract which provides for recoupment prior to the filing of a bankruptcy petition, the debtor should not be allowed to avoid the burden of reimbursement of such sums by having them discharged in bankruptcy while [she] continues to receive the benefits under the same contract." *Hiler*, 99 B.R. at 243. Debtor does not dispute her continued right to receive benefits under the Plan. By withholding benefits to Debtor in the amount of its overpayments to her, the Defendant is merely balancing the amount due under a single contractual relationship.

**Conclusion**

For the reasons set forth above, the Fund is entitled to summary judgment on Count I of the complaint. Because Count II for compensatory and punitive damages and Count III for a recovery under ERISA for violation of the Plan's terms are dependent on there being a violation of Debtor's discharge under 11 U.S.C. § 524(a), and because the court has found none, Defendant is also entitled to summary judgment as to Counts II and III.

Therefore, it is, this 10th day of October, 2002, by the United States Bankruptcy Court for the District of Maryland,

ORDERED, that Defendant's motion for summary judgment is GRANTED; and it is further

ORDERED, that summary judgment is GRANTED in favor of Defendant on Counts I, II and III of the complaint; and it is further

ORDERED, that Plaintiff's motion for partial summary judgment is DENIED.