**In re SAGE RICHMOND, LLC, Debtor.**

**Robert W. Hansen, Disbursing Agent for the Bankruptcy Estate of Sage Richmond, LLC, Movant,**

v.

**Lexington Court, LLC, Respondent.**

**No. 99–35899.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

April 15, 2003.

Michael A. Condyles, Richmond, VA, for plaintiff.

William H. Hall, for DMAS.

H. Slayton Dabney, Jr., Richmond, VA, for Defendant.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Chief Judge.

On December 10, 2002, the court heard oral argument on motion for damages[1]

---

1. The motion was initially styled as a motion for an order holding Lexington Court, LLC in contempt under § 362(h). The court treats

pursuant to 11 U.S.C. § 362(h) filed by Robert W. Hansen, Disbursing Agent for the bankruptcy estate of Sage Richmond, LLC. Movant alleges that respondent Lexington Court, LLC, willfully violated the automatic stay by converting the sum of $24,066.51, constituting property of the bankruptcy estate. Movant further alleges that respondent wrongfully transferred that sum to the Virginia Department of Medical Assistance Services (DMAS). The court also heard argument on motion by DMAS to quash subpoenas issued by movant on the basis of sovereign immunity.

■ The court took the ruling on the motion for damages under advisement and denied movant's request for punitive damages from the bench.[2] The court granted the motion to quash subpoenas from the bench. For the reasons stated in this opinion, the motion for an order requesting damages for respondent's violation of the automatic stay will be denied.

### Findings of Fact.

Debtor operated a nursing care facility in Richmond, Virginia, until October 8, 1999. On August 31, 1999, debtor filed a voluntary petition for relief under chapter 11. Shortly after filing, debtor reached a series of agreements with respondent Lexington Court, LLC, that transferred management and operation of the facility to respondent. Under these agreements, debtor was to receive proceeds of all receivables other than Interim Receivable Proceeds that do not constitute Excess Proceeds (as defined in the court's orders entered October 8 and October 15, 1999).

Following this transition, movant engaged professionals to review the Medicaid and Medicare records of the nursing care facility to determine if any payments were made to respondent for services provided by debtor. Movant initially claimed that $45,571.84 in receivables was improperly retained by respondent. In a letter to counsel for movant dated January 10, 2002, counsel for respondent clarified that, based on respondent's deposit records, the amount was actually $24,066.51. The basis for the discrepancy was that movant included the period from October 8, 1999, through October 28, 1999, in its calculation of receivables. Respondent clarified that, while it managed the facility during that period, movant was still the operator of record and payments made prior to October 28 were made payable to movant. After the letter of January 10, 2002, the parties appear to have agreed that respondent received the sum of $24,066.51 that should have been remitted to movant.[3] *See* Movant's Ex. 8.

It is thus undisputed that this amount represents payments erroneously made by DMAS to respondent for services performed by debtor. Based on the evidence presented at hearing,[4] the court finds that

---

such a request as a motion for damages for willful violation of the automatic stay.

2. An award of punitive damages requires "more than mere willful violation of the automatic stay ...." *Brown v. Town & Country Sales & Serv., Inc. (In re Brown)*, 237 B.R. 316, 321 (Bankr.E.D.Va.1999). Some courts have articulated the standard as a "reckless or callous disregard for the law or rights of others." *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224, 228 (9th Cir.1989). This case clearly does not approach that standard.

3. Movant's motion, filed June 21, 2002, requests repayment of the full $45,571.84 so it is not clear that movant agrees that $24,066.51 is the total sum due from respondent.

4. The court notes that this finding is based on the limited evidence presented at hearing. The court does not have access to affidavits by DMAS that may be instructive on this point. However, the evidence currently before the court indicates that the receivables paid to

if this amount had been paid directly to debtor it would have constituted an overpayment by DMAS to debtor. Debtor would then be obligated to return the overpaid sum to DMAS; the amount could not remain in the estate for disbursement by movant. The fact that there is no proof of claim by DMAS does not affect this finding.[5]

Respondent indicated its willingness to redirect any erroneous payments it was holding to the proper party. Respondent then sought to shield itself from liability to DMAS and approached the Office of the Attorney General of Virginia for clarification as to who should receive the payments erroneously sent to respondent. Subsequently, on May 14, 2002, respondent paid the sum of $24,066.51 to DMAS.

### Discussion and Conclusions of Law.

The state directed respondent to Virginia Code § 32.1–313, providing in part that

[a]ny person, agency or institution, but not including an individual medical assistance recipient of health care, that, without intent to violate this chapter, obtains benefits or payments under medical assistance to which such person, agency or institution is not entitled, or in a greater amount than that to which entitled, shall be liable for (I) any excess benefits or payments received .... No person, agency or institution shall be liable for payment of interest, however, when excess benefits or payments were obtained as a result of errors made solely by the Department of Medical Assistance Services.

Va.Code Ann. § 32.1–313 (Michie 2001). In the ordinary case, the statute clearly

requires a party in respondent's position to return the payments to the state agency. However, this case is being conducted in the context of a chapter 11 bankruptcy in which respondent has not moved for relief from the automatic stay.

■ Under 11 U.S.C. § 362(h), a party "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees ...." This court has ruled that a "willful violation of the automatic stay occurs where the creditor is aware of the automatic stay and acts intentionally." *In re Brown*, 237 B.R. at 320. This court has further held that a "willful violation does not require specific intent to violate the stay, only knowledge of the stay and an intentional act." *In re Hendry*, 214 B.R. 473, 475 (Bankr.E.D.Va.1997).

■ I do not doubt respondent's good faith. The evidence demonstrates that respondent proceeded with caution in seeking a resolution to this matter. The evidence also demonstrates that respondent was aware of debtor's bankruptcy case and was unclear as to who should receive the $24,066.51 intended for debtor. However, respondent's good faith does not save it from violating the automatic stay. A creditor may willfully violate the automatic stay "even if the creditor believed itself justified in taking an action found to be violative of the stay." *In re Gray*, 97 B.R. 930, 936 (Bankr.N.D.Ill.1989). A creditor with doubt as to how the stay will apply to property of the estate "should seek court permission and relief from stay." *In re Brown*, 237 B.R. at 321; *see also In re Gray*, 97 B.R. at 936 (stating that a credi-

---

respondent would have been an overpayment if paid to movant.

**5.** There is evidence that DMAS may have been able to recover the funds through an equitable recoupment. If possible, such ac-

tion would allow DMAS to recover the overpaid funds without implicating the Bankruptcy Code. I make no finding on this issue at this time.

tor should resolve the uncertainty through adjudication in the bankruptcy court); *Burley v. Am. Gas & Oil Investors (In re Heafitz)*, 85 B.R. 274, 281 (Bankr.S.D.N.Y. 1988) (stating that where parties dispute whether an action violates the stay, the party seeking to take action against estate funds must first approach the bankruptcy court). A creditor attempting to unilaterally interpret the application of the stay "undertakes the risk of sanctions" under § 362. *In re Brown*, 237 B.R. at 321.

■ In a typical bankruptcy case respondent's actions would constitute a clear violation of the automatic stay and subject it to an award of damages. However, the equities of this case call for a different result. Under the unusual circumstances here, I find that the funds at issue were not absolute property of the estate for purposes of § 362. They were instead, property of the estate subject to the superior claim of DMAS. In a case involving overpayments of federal subsidy payments to a private airline by the Department of Transportation (DOT), the court found that

> [a]t the commencement of this Chapter 11 proceeding, the overpayments received by debtor became property of the estate subject, however, to the superior claim of DOT since debtor was not entitled to receive or retain these overpayments. Likewise, debtor's right to receive post-petition subsidy payments were subject to DOT's right to recoup the amounts overpaid pre-petition; therefore, the interest that the bankruptcy estate acquired in the post-petition subsidy payments is subject to DOT's right to recoup.

*Am. Cent. Airlines, Inc. v. Dep't of Transp. (In re Am. Cent. Airlines, Inc.)*, 60 B.R. 587, 592 (Bankr.N.D.Iowa 1986). If the court were to allow movant to recover and retain the overpayments the estate would be unjustly enriched and its remaining creditors would receive a windfall. *See id.; Long Term Disability Plan of Hoffman–La Roche, Inc. v. Hiler (In re Hiler)*, 99 B.R. 238, 244–45 (Bankr.D.N.J.1989).

Because the funds in dispute were not property of the estate that movant was entitled to distribute to other creditors, the court will not award damages against respondent for violation of the automatic stay. Movant's only loss here was the right to repay the funds to DMAS. The estate and its creditors will suffer no prejudice as a result of respondent's actions.

If debtor believes it is entitled to payment of these funds it must pursue its claim against DMAS. That movant has taken no action against DMAS to recover these funds is indicative to the court that these funds are more appropriately viewed as an overpayment that debtor was obligated to repay DMAS rather than a debt that DMAS owed to movant.

A separate order will be entered denying movant's motion for a damage award under § 362(h).