In re Amado J. IZAGUIRRE, Debtor.

**ANTHEM LIFE INSURANCE CO., Plaintiff,**

v.

**Amado J. IZAGUIRRE, Defendant.**

**Bankruptcy No. 92–70435.
Adv. No. 93–6165.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

March 22, 1994.

Bradley L. Cooper of Alston & Bird, Atlanta, GA, for Anthem Life Ins. Co.

No one appeared on behalf of the debtor.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DISCHARGEABILITY BUT DETERMINING THAT A DISCHARGE WOULD NOT BAR RECOUPMENT

JAMES E. MASSEY, Bankruptcy Judge.

Amado J. Izaguirre (the "Debtor") is a beneficiary under a long-term disability policy issued by a predecessor to the plaintiff, Anthem Life Insurance Co. ("Anthem"). The policy provides that benefits otherwise payable to an employee are to be reduced by the amounts an employee is eligible to receive under the United States Social Security Act. Anthem contends that the Debtor misrepresented his right to receive Social Security benefits and that as a result of that misrepresentation, Anthem overpaid the benefits to which the Debtor was entitled. An-

them moves for summary judgment against the Debtor for $38,788.18 and for a determination that the debt is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(B). Anthem also seeks a determination that the alleged debt to Anthem is nondischargeable by virtue of a right of recoupment.

Based upon the evidence presented with the Motion for Summary Judgment, and the record in this adversary proceeding, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

In 1981, the Debtor became entitled to long-term disability benefits under a Group Long Term Disability Employee Insurance Policy (the "Policy") issued by Coastal States Life Insurance Company, a predecessor to Anthem, to the Debtor's employer, Metropolitan Atlanta Rapid Transit Authority. The Policy, as amended, provides in relevant part in the policy amendment as follows:

"B.  ...

Social Security Integration: the monthly benefit will be reduced by the amount of disability or retirement benefits under the United States Social Security Act ... as follows:

1) disability benefits which the insured employee is eligible for, and benefits which the insured employees's spouse, child or children are eligible for as a result of the insured employee's eligibility for such disability benefits.

.     .     .     .     .

With respect to items B.1 ... only, if the insured employee and/or the insured employees's spouse, child or children do not apply for benefits under the above acts or plans, the monthly benefit will be reduced by any amount which he, she or they would be eligible for if application were made. However, this reduction will not apply if proof is submitted to the Insurance Company that the application for benefits, after final determination, has been disallowed.

After the Debtor began receiving disability benefit payments from Anthem, he signed documents entitled "Insured's Supplementary Statement" (the "Statements") declaring that at the time of signing of each Statement, he was not eligible for, had not applied for or was not then receiving Social Security benefits. The Debtor executed the Statements on October 20, 1985, June 16, 1986, December 22, 1986, and on another occasion without dating that Statement.

Anthem alleged in its complaint that at the time of signing the Statements, the Debtor was "receiving" Social Security benefits and that as a result of payments of benefits to the Debtor in excess of the amount to which he was entitled under the policy, the Debtor is indebted to Anthem in the amount of $38,-788.18. In his answer, the Debtor denied those allegations. Thereafter, Anthem amended its complaint to allege that at the time of signing the Statements the Debtor was eligible for and had applied for Social Security benefits. Anthem amended its complaint a second time to add an additional count for recoupment, alleging that Anthem had the right to recoup overpayments against future continuing benefits payable to the Debtor. The Debtor failed to answer or otherwise respond to the first and second amended complaints.

On June 7, 1993, Anthem served the Debtor with a copy of "Anthem Life Insurance Company's First Continuing Interrogatories, Requests for Admission, and Request for Production of Documents to Debtor" (the "Discovery Requests") and filed a Certificate of Service with the court. The Requests for Admission asked the Debtor to admit that (1) the Policy governs the Debtor's right to receive disability benefits from Anthem, (2) the Debtor executed the Statements, (3) at the time Debtor executed the Statements he had applied for Social Security benefits, (4) at the time Debtor executed the Statements he was eligible for Social Security benefits, and (5) at the time Debtor executed the Statements he was receiving Social Security benefits. The Debtor failed to respond to the discovery, including the Requests for Admission.

Anthem supported its Motion for Summary Judgment with an affidavit of an employee, Bonnie Green, who stated that "[b]efore it learned that Debtor had applied for,

was eligible to receive, and/or was receiving social security benefits, Anthem had continued to pay his monthly long term disability payment in its entirety, and as a result it had overpaid Debtor in the amount of $42,798.26" and that Anthem had begun to recoup overpayments from monthly disability benefits such that "[b]y the time Anthem learned of the present bankruptcy filing, Debtor was still indebted to Anthem in the amount of $38,788.18 as a result of overpayment of benefits." The affidavit of Ms. Green states that she is employed by Anthem and has personal knowledge of the facts stated in the affidavit. The averments of Ms. Green are tentative as to receipt of funds by the Debtor from Social Security.

## CONCLUSIONS OF LAW

Pursuant to Fed.R.Civ.P. 56(c), which is incorporated in Fed.R.Bankr.P. 7056, a party moving for summary judgment is entitled to prevail if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The initial burden of proof is on the moving party to establish that no genuine factual issue exists. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir.1991). The movant must point to the pleadings, discovery responses or supporting affidavits which tend to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. This evidence is to be construed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525 (11th Cir.1987).

Unless the moving party satisfies its burden to show an absence of a genuine issue of material facts, no burden of going forward arises for the opposing party to demonstrate that a genuine issue of material fact exists.

*Clark*, 929 F.2d at 608. Where the moving party has satisfied its burden, the non-moving party must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

In support of its Motion for Summary Judgment, Anthem asserts that the Debtor admitted all essential factual elements necessary for a determination of non-dischargeability of debt, which entitles it to a judgment pursuant to section 523(a)(2)(B) and pursuant to a common law right of recoupment as a matter of law. Anthem contends that the Debtor's failure to answer the first amended complaint, second amended complaint and Requests for Admission results in his admission of all factual allegations contained therein.

■ Fed.R.Civ.P. 8(d), which is incorporated in Fed.R.Bankr.P. 7008(a), provides that the failure to deny averments in a pleading that requires a responsive pleading constitutes an admission of the facts alleged therein. The party to whom a request for admission is directed has the burden to take some affirmative action either to answer the request or to object to it. *Mangan v. Broderick & Bascom Rope Co.*, 351 F.2d 24 (7th Cir.1965), *cert. denied*, 383 U.S. 926, 86 S.Ct. 930, 15 L.Ed.2d 846 (1966). If a written answer or objection to a request for admission is not served upon the party requesting the admission within 30 days after service of the request, the request is deemed admitted. Fed.R.Civ.P. 36, incorporated in Fed. R.Bankr.P. 7036. *U.S. ex rel. Seals v. Wiman*, 304 F.2d 53 (5th Cir.1962), *cert. denied*, 372 U.S. 915, 83 S.Ct. 717, 9 L.Ed.2d 722 (1963).[1]

■ On October 18, 1993, Anthem filed a Notice of Filing Discovery Materials in Support of Motion for Summary Judgment and with it, the Discovery Requests. The unanswered Requests for Admission constitute "admissions on file" for the purposes of Fed. R.Civ.P. 56(c). The Debtor's failure to answer or otherwise to respond to either of the amended complaints results in the admission

---

**1.** *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981), renders decisions of the Fifth Circuit issued prior to September 30, 1981, binding precedent for the Eleventh Circuit.

by·the Debtor of Anthem's averments in those amended complaints, with an exception explained below.

The allegation in the Motion for Summary Judgment that the Debtor failed to respond to the first amended complaint, second amended complaint and Requests for Admission is uncontroverted. The Debtor failed to file any response to the Motion for Summary Judgment; accordingly, the Motion for Summary Judgment is deemed unopposed. LR 220–1(b)(1), N.D.Ga. included in BLR 705–2, N.D.Ga.

Because an issue of fact remains with respect to an element of plaintiff Anthem's claim under section 523(a)(2)(B), summary judgment must be denied on that count. No issue of material fact exists with respect to Count II of the second amended complaint. The gravamen of Count II of the Complaint and the requested relief is that Anthem's claim be determined to be nondischargeable. Because section 523 does not include recoupment as a ground for denying the dischargeability of a debt, the motion must be denied. Nonetheless, Anthem is entitled to a right of recoupment, notwithstanding the Debtor's discharge, if he is entitled to one.

**A.** *Exception to Discharge Pursuant to 11 U.S.C. § 523(a)(2)(B).*

■ Section 523(a)(2)(B) provides as follows:

(a) A discharge under section 727 ... of this title ... does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

Thus, to prevail under this section, Anthem must show the following four facts about the writing in question:

1. That it is materially false,

2. That it concerns the Debtor's financial condition,

3. That Anthem reasonably relied on it, and

4. That the Debtor published the writing with the intent to deceive Anthem.

Anthem has established three of the four elements under section 523(a)(2)(B). By failing to answer the Requests for Admissions, the Debtor has admitted that he executed the Statements and that the Statements were false. The Statements concern the Debtor's financial condition because they contain information about the Debtor's eligibility for benefits from collateral sources. Anthem alleged, and the Debtor admitted by failing to answer paragraph 4 of the first and second amended complaints, that the Statements he executed were made with the intent to deceive insofar as the Statements referred to the Debtor's eligibility and application for social security benefits.

■ The missing element is that of reasonable reliance on the Debtor's misrepresentations. Anthem has shown no fact to support a finding that it reasonably relied upon the Statements. Although Anthem alleges in paragraphs 5 and 6 of its first and second amended complaints that it reasonably relied on the Statements, the Debtor's failure to answer the amended complaints is not an admission with respect to reliance on the Statements. These same averments were contained in paragraphs 5 and 6 of the original complaint, which the Debtor denied. The failure to deny the same allegations in an amended complaint does not constitute an admission pursuant to F.R.Civ.P. 8(d) where the original complaint contained substantially the same allegations and the defendant denied them in the answer to that complaint. *LaGorga v. Kroger Co.*, 407 F.2d 671 (3rd Cir.1969).

■ Fed.R.Civ.P. 15(a) states in part that "A party shall plead in response to an amended pleading" within the time specified in that rule. Under Fed.R.Civ.P. 15(a), a

party could amend a complaint simply by adding provisions such as a second count to the complaint without repeating the first count of the complaint. In such a case, it could not seriously be argued that if a defendant denied the allegations of the original complaint and responded to the amendment by addressing only the new count, the defendant would have thereby admitted the allegations contained in the original complaint. Similarly, if a defendant denied the allegations in the original complaint and responded only to the added count in an amended complaint but did not respond to the original count that was merely repeated in the amended complaint, the plaintiff could not seriously contend that under Fed.R.Civ.P. 8(d), the defendant admitted the allegations in the first count. It logically follows that if a litigant denied allegations in the original complaint but failed to respond at all to an amended complaint that repeated the allegations in the first complaint and added new ones, the failure to respond to the amended complaint constitutes an admission only as to the added allegations. Fed.R.Civ.P. 15(a) requires a response only to the altered or added allegations in an amended pleading; if a party has already responded to a portion of a pleading, the prior response is deemed to be a response to that portion contained in a new pleading.

Anthem has offered no other evidence supporting an allegation that Anthem reasonably relied on the Statements. The affidavit of Bonnie Green does not state that Anthem reasonably relied on the Statements in deciding to continue to make benefit payments to the Debtor or that she has personal knowledge regarding reliance on the Statements. Accordingly, Anthem has failed to show that there is no issue of fact with regard to one of the necessary elements for a judgment under section 523(a)(2)(B).

### B. *Right of Recoupment.*

■ By failing to answer the second amended complaint, the Debtor admitted the essential factual allegation necessary to support a right of recoupment, which is that the obligation of Anthem to pay future benefits and the overpayment of past benefits arose

from the same contract. Anthem asserts it is entitled to a judgment as a matter of law and that Anthem's "claim" is nondischargeable because it has a right of recoupment.

■ Recoupment is defined in *Black's Law Dictionary* (6th ed. 1990) as "[t]he right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to plaintiff's claim." A party may not use recoupment to recover damages from the other party but only to reduce a liability that would otherwise be owed to the other party. A party may raise the defense of recoupment even though a counterclaim that the facts giving rise to recoupment may support is barred by a statute of limitations. *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In *Reiter v. Cooper,* — U.S. ——, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), the Supreme Court considered the doctrine of recoupment in the context of litigation involving freight undercharges allegedly due to a bankrupt trucking company. The trucking company's trustee sued to recover the undercharges, and the defendant defended on the ground that an attempt to collect more than negotiated rates was an "unreasonable practice" made unlawful by the Interstate Commerce Act and the tariff rates were unreasonably high. In approving the defense, which in that case was technically a counterclaim, the Court observed in a footnote that "It is well settled, moreover, that a bankruptcy defendant can meet a plaintiff-debtor's claim with a counterclaim arising out of the same transaction, at least to the extent that the defendant merely seeks recoupment." *Reiter,* — U.S. at ——, 113 S.Ct. at 1218 n. 2.

■ Recoupment has some of the characteristics of setoff. Setoff and recoupment have a common origin and are equitable in nature, but the two doctrines are distinguishable and are treated differently in the bankruptcy context. While the Bankruptcy Code speaks directly about setoff in sections 362(a) and 553, the Code is silent about the doctrine of recoupment.

All that setoff requires is mutuality of claims—that the claims are asserted against the same entity in the same capacity; the mutual claims need not arise out of the same transaction. Accordingly, in a bankruptcy case, the availability of setoff turns on whether the claims of the creditor and the debtor both arose pre-petition or both arose post-petition.

The filing of a bankruptcy case generally closes the financial statements of a debtor completely as of the time the petition is filed. The rights of a debtor and a creditor with respect to liability on particular events or transactions are usually defined by first determining on which side of the time "cleavage" the events or transactions occurred. The purpose of that dividing line is primarily to give the debtor a fresh start. To effect the fresh start policy, the Bankruptcy Code in several instances deals with the post-petition events by deeming those events to have occurred immediately prior to the filing of the petition. *E.g.,* 11 U.S.C. § 365(g)(1). The requirement of mutuality in the exercise of a right of setoff is another example of the effect of closing a debtor's books as of the filing of the petition.

In this case, Anthem asserts that its right of recoupment renders its claim nondischargeable. Section 523 makes no mention of recoupment, and the existence of a right of recoupment therefore does not render a debt nondischargeable. For this reason, Anthem's motion for summary judgment on Count II of its second amended complaint as stated must be denied. It can be presumed from Anthem's requested relief that it seeks a determination that the right of recoupment will survive the Debtor's discharge. Although Anthem has not explicitly asked for this relief, the court construes Count II as a request for declaratory relief on the issue of whether a discharge bars a right of recoupment.

As the Supreme Court stated in *Reiter,* courts have often permitted the use of recoupment in bankruptcy cases. The availability of recoupment has rested on equitable grounds such as to prevent unjust enrichment. *Ashland Petroleum Co. v. B & L Oil Co. (In re B & L Oil Co.),* 782 F.2d 155 (10th Cir.1986). In contract cases courts have drawn an analogy to the rights of a debtor with respect to an executory contract, which a debtor must either reject in its entirety or assume in its entirety, in concluding that a debtor may not "reject" the burdens of a contract that include the pre-petition claim of the creditor and continue to receive the benefits under the contract by requiring post-petition performance or payment by the other party. *E.g., American Cent. Airlines, Inc. v. Dept. of Transportation (In re American Cent. Airlines, Inc.),* 60 B.R. 587, 591 (Bankr.N.D. Iowa 1986). The court in the *American Central* case also agreed with the debtor in that case that if a debtor's right in property is subject to a common law right of recoupment at the time of the filing of the bankruptcy petition, then that property becomes property of the estate subject to the right of the creditor to recoupment. *American Central,* 60 B.R. at 592.

In most of the reported bankruptcy decisions on this subject, the use of recoupment has occurred in cases in which the debtor sought to recover on a contract during the pendency of the case. Here, Anthem's claim against the Debtor arose prepetition and the claim of the Debtor against Anthem for future benefits has and will arise postpetition; therefore, the mutuality necessary to permit an offset under section 553 of the Bankruptcy Code is missing. The Debtor has filed no suit against Anthem. If Anthem's claim is ultimately discharged, the question remains whether, as a matter of law, the right of recoupment survives the discharge or whether Anthem would be liable to the Debtor for the full amount of the benefits coming due postpetition.

At least two courts have held that a discharge does not affect a creditor's right of recoupment with respect to the overpayment of disability benefits. *Brown v. General Motors Corp. (In re Brown),* 152 B.R. 935 (W.D.Wis.1993); *Long Term Disability Plan of Hoffman–LaRoch, Inc. v. Hiler (In re Hiler),* 99 B.R. 238 (Bankr.D.N.J.1989); *contra Baker v. United States (In re Baker),* 100 B.R. 80 (M.D.Fla.1989) (distinguished overpayment of federal disability benefits as a

social welfare entitlement and not derived by a contract between the government and a debtor).

The *Brown* court held that the "right of recoupment" is not a "claim" within the meaning of 11 U.S.C. § 101(5); therefore, it is not a "debt" as such is defined by section 101(12) which would be discharged in the debtor's case. *Brown,* 152 B.R. at 938. Accordingly, the *Brown* court determined that the private employee benefit plan could recoup overpayments from future benefits of the debtor despite the debtor's discharge in bankruptcy.

The court in *Hiler* also determined that overpayments of disability benefits could be recouped notwithstanding the debtor's discharge. That court based its decision on the rationale that "a debtor should not be allowed to avoid the burden of reimbursement of such sums by having them discharged in bankruptcy while he continues to receive the benefits under the same contract." *Hiler,* 99 B.R. at 244.

■ This court disagrees with the analysis of *Brown.* A party seeking recoupment has a claim within the meaning of 11 U.S.C. § 101(5). Anthem has admitted as much by seeking to have that claim declared nondischargeable. If that claim is discharged, the question is squarely presented whether Anthem's future obligations to the Debtor can be reduced by the amount of the discharged claim. It is of no help to the analysis of this issue to observe that the right of recoupment is not a debt.

The court is likewise not persuaded by the reasoning in *Hiler.* It might appear inequitable at first blush to permit a party to a contract to reap benefits, while avoiding obligations, but that is what happens in bankruptcy every day. Debtors enter into contracts for the purchase of goods, fail to pay for them, file bankruptcy, never pay the creditor, and keep the goods. Thus, the *Hiler* court's approach of trying to balance equities fails to address the issue presented in a way that squares recoupment with the grant of a discharge.

Although courts appear to have permitted recoupment in the vast majority of cases in which the parties raised that issue, not all courts have done so. Criticism of recoupment in bankruptcy cases usually focuses on the lack of statutory authority to net out pre-petition claims and post-petition obligations, the unequal treatment of similarly situated creditors that may result from recoupment, and the elevation of pre-petition claims to post-petition status without a counterbalancing benefit to the estate. *See, e.g.,* Buschman, *Benefits and Burdens: Post–Petition Performance of Unassumed Executory Contracts,* 5 Bankr.Dev.J. 341 (1988); *In re Drexel Burnham Lambert Group, Inc.,* 113 B.R. 830, 855 (Bankr.S.D.N.Y.1990) (Judge Bushman registered an objection to the use of recoupment in cases in which it has the effect of priming all unsecured creditors).

■ Whether or not criticism of such cases is valid, permitting recoupment in this case does not involve an executory contract, the assumption of which would benefit only the other party to the contract but not the estate, because here, there is no executory contract for the Debtor to assume. Moreover, the denial of recoupment will not benefit other creditors because post-petition disability benefits are exempt under Georgia law. O.C.G.A. § 44–13–100(a)(2)(C).[2] Therefore, barring recoupment is not necessary to treat similarly situated creditors alike, because in no event will creditors share in the stream of benefit payments.

■ The proper starting point of an analysis of the issue of whether a discharge bars the use of recoupment is section 524(a) of the Bankruptcy Code dealing with the effect of discharge. The Supreme Court described recoupment in *Reiter* as "the setting off against the asserted liability of a counterclaim arising out of the same transaction." *Reiter,* —— U.S. at ——, 113 S.Ct. at 1218. Section 524(a)(2) provides that a discharge "operates as an injunction against the commencement or continuation of . . . an act, to . . . offset any such debt [a debt discharged under section 727 and other sections] as a personal liability of the debtor. . . ." A quick

---

**2.** Georgia has opted out of the federal exemption scheme. O.C.G.A. § 44–13–100(b).

and uncritical reading of that section might lead one to the conclusion that to the extent recoupment operates as an offset of a claim that is a personal liability of the debtor, its use would be barred against a debtor with a discharge. Although recoupment may be viewed as an offset to the extent it is viewed as a counterclaim, recoupment has a chameleon-like quality that also permits it to be viewed simply as a defense. In *Reiter*, the Supreme Court quoted 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1275 (2d ed. 1990) for the proposition that it is "not clear whether set-offs and recoupments should be viewed as defenses or counterclaims." — U.S. at —, 113 S.Ct. at 1217. Permitting Anthem to raise a defense of recoupment to a claim that the Debtor might make to benefits due post-petition does not violate section 524(a)(2) because the *defense* of recoupment adjusts the claim of the plaintiff under the contract. Hence, recoupment asserted as a defense is not an "offset" to a claim within the meaning of section 524(a)(2); recoupment speaks not simply to the net amount due from one party to the other computed by subtracting one claim from the other, but rather to the amount of the plaintiff's claim alone on a particular contract, transaction or event.

■ Recoupment used as a defense does not contravene the fresh start policy implicit in the discharge provisions of the Bankruptcy Code or impair the Debtor's exemptions. The property of the estate, which the Debtor may exempt and retain, is the totality of what is due him under the Policy on the date the petition was filed, and not merely the stream of postpetition payments computed without regard to payments made prepetition. Although the Debtor may receive less income from the disability policy after bankruptcy than he would have received had the insurance company not paid that income prematurely, the reduced future payments are a function of what he has been paid as well as what will come due. The Policy requires Anthem to make monthly benefit payments, but nothing in the Policy prohibits Anthem from making those payments prematurely. The Debtor's claim against Anthem in the future cannot be separated from what Anthem has already paid, even where the payments are made prior to the filing of the petition. Therefore, Anthem's post-petition obligation to the debtor is subject to adjustment to reflect accurately the amount and timing of payments due to the Debtor.

■ How much Anthem may adjust its obligation by exercising a right of recoupment the court cannot presently determine. Nor is there is necessarily a need for it to do so. Anthem contends that the automatic stay does not apply to the doctrine of recoupment and cites several cases to support that proposition. Although this view may be technically correct in light of this court's narrow view of recoupment, the better approach is to seek relief from the stay as a precaution. An error in computing one's claim could result in a violation of section 524(a), the consequences of which under certain facts could be severe. Here, Anthem has taken the proper precaution of asserting that it has a right of recoupment. Having failed to respond to Anthem's recoupment Count, the Debtor will not be heard to contend that an error by Anthem in the amount alleged to be due would constitute a violation of the stay or of Section 524.

■ The court also notes that if the Debtor is able to show that an application for Social Security benefits that he made or might have made is disallowed, no reduction of the monthly benefit would be made under the Policy. The court construes this provision of the Policy to place the burden on the Debtor to show such a disallowance. Although under proper facts, Anthem might be required to pay withheld benefits if such a showing were made, the withholding of payments until the Debtor makes some showing that he is entitled to benefits will not be a violation of the stay or Section 524.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion for Summary Judgment is DENIED, insofar as it seeks a determination that Anthem's claim is nondischargeable, but it is further

ORDERED AND ADJUDGED that should the Debtor receive a discharge of Anthem's claim, the discharge will not bar

Anthem from exercising its right of recoupment as a defense to any claim the Debtor may hereafter make under the Policy for disability benefits, up to the amount Anthem paid to the Debtor in excess of its legal obligation under the Policy. No good faith exercise of its right of recoupment by Anthem will be deemed to violate the automatic stay or 11 U.S.C. § 524, even if Anthem's computation of its claim were later to be proved incorrect. It is further

ORDERED AND ADJUDGED that unless Anthem informs this court within 30 days of the date of entry of this order that it intends to proceed to trial in this proceeding on the issue of dischargeability pursuant to section 523 as contained in Count I of the second amended complaint, Count I of the second amended complaint will be deemed abandoned. The court will in due course enter a partial or final judgment, depending upon the response Anthem makes to the foregoing direction, that is consistent with this order.