In re **KINGS TERRACE NURSING HOME AND HEALTH RELATED FACILITY, in Receivership, Debtor.**

**KINGS TERRACE NURSING HOME AND HEALTH RELATED FACILITY, in Receivership, Plaintiff–Appellee,**

v.

**NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES, Defendant–Appellant.**

No. 95 Civ. 0443 (LAK).

United States District Court, S.D. New York.

July 10, 1995.

Arnold S. Klein, Loretta M. Gastwirth, Ted Berkowitz, Meltzer, Lippe, Goldstein, Wolf, Schlissel & Sazer, P.C., Mineola, NY, for debtor-plaintiff-appellee.

Terri H. Altamura, August L. Fietkau, Asst. Attys. Gen., New York City, Dennis C. Vacco, Atty. Gen. of State of New York, Albany, NY, for defendant-appellant.

David S. Rosner, Kasowitz Hoff Benson Torres & Friedman, New York City, for Unsecured Creditors Committee.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This appeal from an order of the Bankruptcy Court (Conrad, J.) presents the question whether the New York State Department of Social Services ("DSS") may recoup alleged pre-petition Medicaid overpayments to a nursing home against post-confirmation reimbursements where the DSS, although on notice of the bankruptcy, failed to file a notice of claim. The Court holds, as did the Court below, that the DSS's right to recapture the alleged overpayments was a "claim" within the meaning of the Bankruptcy Code, that any right to recoupment is barred by

the DSS's knowing and intentional failure to file a proof of claim, and that the DSS's right, if any, was discharged by the confirmation order and the Code. In consequence, the order appealed from is affirmed.

The debtor, Kings Terrace Nursing Home and Health Related Facility ("Kings Terrace"), as its name suggests, is a nursing home or, in regulatory parlance, skilled nursing facility which receives payments pursuant to provider agreements with DSS under the New York Medicaid program in connection with services it provides to elderly, infirm patients.

On April 5, 1991, Kings Terrace filed a voluntary petition for relief pursuant to Chapter 11 of the Code. At the time it did so, the DSS was in the process of conducting audits of Kings Terrace, which continued post-petition, for the 1983 and 1985 base periods to determine whether Kings Terrace had received overpayments. In consequence, Kings Terrace listed DSS on Schedule A–3 to its petition as an unsecured, non-priority claimant with a contingent and disputed claim. DSS, as a scheduled creditor, thus was on notice of the debtor's case and of all subsequent proceedings therein at all times.

The Bankruptcy Court in due course fixed November 21, 1991 as the bar date (i.e., the last day for creditors to file proof of their claims). DSS received actual notification of the bar date. Nevertheless, DSS decided not to file a proof of claim or otherwise to participate in the Bankruptcy Court proceedings. Indeed, it did not appear at the plan confirmation hearing that occurred some months later. The Bankruptcy Court confirmed the debtor's plan of reorganization, finding among other things that the plan was feasible. A confirmation order, which among other things enjoins all creditors from taking any further action to collect on their claims against the debtor, was entered on October 28, 1992. No appeal was taken by DSS from the confirmation order.

In the fall of 1994, DSS issued two draft audit reports which, in the aggregate, claim that Kings Terrace owes DSS approximately $4.85 million in respect of alleged Medicaid overpayments in 1983 and approximately $148,000 in respect of the period 1986

through 1992. The debtor moved by order to show cause in the Bankruptcy Court for an order, *inter alia*, enjoining any further collection activity. The DSS contended that its claim was not barred because it sought only to recoup the alleged overpayments against post-petition payments otherwise due to Kings Terrace, asserting that such a right to equitable recoupment is neither a "claim" within the meaning of the Code nor barred by the confirmation of the plan. Judge Conrad granted the debtor's motion for summary judgment, rejecting these among other arguments. *In re Kings Terrace Nursing Home and Health Related Facility*, No. 91 B 11478, 1995 WL 65531 (Bankr.S.D.N.Y. Jan. 27, 1995) (hereinafter *Kings Terrace* ).

■ This Court agrees entirely with Judge Conrad's conclusions that the DSS's alleged right to recoupment rests on a "claim" under the Code and that this claim was barred by the confirmation order and discharged under Section 1141(d) of the Code, 11 U.S.C. § 1141(d) (1993). Accordingly, DSS is not entitled to recoupment here. *Kings Terrace*, 1995 WL 65531, at *4–6 (conclusions of law ¶¶ 1–18). These grounds fully support the order appealed from. Accordingly, there is no need to address the alternative bases upon which the Bankruptcy Court rested its decision. Indeed, the Court writes only to amplify two points.

DSS's attack on the decision below depends on the proposition that its alleged right to recoupment is merely an equitable remedy that gives no right to actual payment and, in consequence, is not a "claim" under Section 101(5) of the Code, 11 U.S.C. § 101(5) (1993). But this is a *non sequitur*. It confuses the remedy with the right.

■ Recoupment indeed is an equitable remedy that, of itself, gives no right to actual payment. Its origin dates to the time of Henry VIII, and there evidently has been some debate as to whether it rests on the doctrine of failure of consideration or merely upon equity's abhorrence of a circuity of actions. 3 THEODORE SEDGWICK, A TREATISE ON THE MEASURE OF DAMAGES §§ 1034, 1040–42 (9th ed. 1912) (hereinafter SEDGWICK ).

But one thing is crystal clear: whatever its foundations, there can be no recoupment unless there is an underlying right. *Id.* § 1041 ("a defendant can recoup nothing that he [*sic*] could not recover in an action").

▇▇ Section 101(5) of the Bankruptcy Code provides that "claim" means:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

"(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;"

Given that there can be no right to recoupment unless the party claiming recoupment has some underlying right to recover, directly or indirectly, against the party from whom recoupment is sought, an alleged right to recoupment unquestionably is a "claim" within the meaning of the Code.[1] *In re Izaguirre,* 166 B.R. 484, 492 (Bankr.N.D.Ga. 1994); *see Johnson v. Home State Bank,* 501 U.S. 78, 83–85, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) (Congress intended broadest possible definition of "claim"); *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990) (same); *Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 707–08, 83 L.Ed.2d 649 (1985) (same); *contra Brown v. General Motors Corp.,* 152 B.R. 935, 938 (W.D.Wis.1993). This is particularly true in light of *In re Chateaugay Corp.,* 944 F.2d 997, 1008 (2d Cir.1991), where the Second Circuit held that a right to an equitable remedy, if the remedy is an alternative to recovery of response costs, is a "claim" within the ambit of Section 101(4)(B) (now Section 101(5)(B)). Moreover, the legislative history supports this conclusion. It makes clear that Congress intended the definition of "claim" to include a right to an equitable remedy for a breach of performance that gives rise to a right of payment. *See* 124

Cong.Rec. 32393 (1978) (remarks of Rep. Don Edwards), reprinted in 1978 U.S.Code Cong. & Admin.News 6436, 6437–38 ("claim" includes "a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment"); *see id.* at 33992 (remarks of Sen. Dennis DeConcini), reprinted in 1978 U.S.Code Cong. & Admin.News 6505, 6506 (same).

Here it is undeniable, as DSS conceded at oral argument, that any alleged overpayment to the debtor gave rise to a right on the part of DSS to recover the money pursuant not only to the DSS's own regulations, *see* 18 N.Y.C.R.R. §§ 518.5, 518.6, but also in contract and quasi contract. Recoupment is merely one form of relief available, in proper circumstances, for the vindication of that right. Hence, the underlying right to payment was a claim within the meaning of Section 101(5).

▇▇ Nor can DSS's contention that a right to recoupment is merely an equitable remedy that is not a claim under Section 101(5) be squared with the structure and policy of the Bankruptcy Code. The object of Chapter 11 of the Code is to permit a potentially viable debtor to restructure and emerge from bankruptcy protection. *E.g., In re Gateway North Estates, Inc.,* 165 B.R. 427, 429 (E.D.Mich.1994), *appeal dismissed,* No. 94–1332, 1994 WL 610167, 1994 U.S.App. LEXIS 31002 (6th Cir. Nov. 3, 1994). The plan of reorganization is the blueprint by which prepetition debts are satisfied, discharged, or otherwise dealt with and the foundation of a viable post-confirmation enterprise constructed. Central to the process is the requirement that the Bankruptcy Court find, as a condition of plan confirmation, that the plan reorganization is feasible or, to quote Section 1129(a)(11) of the Code, that:

"Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11) (1993).

---

1. The Court is aware, of course, that this is a separate question from whether there is a right to recoupment in the particular circumstances of a given case.

The broad definition of "claim" in Section 101(5) performs a vital role in the reorganization process by requiring, in conjunction with the bar date, that all those with a potential call on the debtor's assets, provided the call in at least some circumstances could give rise to a suit for payment, *see In re Chateaugay Corp.*, 944 F.2d at 1003, come before the reorganization court so that those demands can be allowed or disallowed and their priority and dischargeability determined. This is important even with respect to valid claims for equitable recoupment, despite their usual survival of plan confirmation, because the existence of such claims, like the existence of other non-dischargeable debts, can have a significant impact on the necessary determination of whether a proposed plan is feasible. *See* LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 1129.02[11] (15th ed. 1994); *cf. In re Chateaugay Corp.*, 944 F.2d at 1002. To allow a creditor such as DSS to stand outside the process of reorganization and later assert its right to recoupment thus would frustrate an important policy underlying the Code by undermining and, in some circumstances, destroying the utility and reliability of the bankruptcy judge's feasibility determination. At least in some circumstances, it would be impossible for a judge to determine accurately whether a proposed plan would create a viable reorganized company or, instead, an entity ripe for another bankruptcy precipitated by the absent creditor.

DSS in substance has no answers to any of these concerns. It places its principal reliance on *In re Yonkers Hamilton Sanitarium Inc.*, 34 B.R. 385 (S.D.N.Y.1983), *aff'g* 22 B.R. 427 (Bankr.S.D.N.Y.1982), and *Mercy Hospital of Watertown v. New York State Dep't of Social Services*, 93 Civ. 1685 (N.D.N.Y. Aug. 29, 1994), *aff'g In re Mercy Hospital of Watertown*, No. 90–02501A, Adv. Proc. No. 92–70155A (Bankr.N.D.N.Y. Aug. 5, 1993). Neither warrants a different result.

*Yonkers Hamilton* involved an action by the debtor's trustee to recover allegedly impermissible setoffs and preferential adjustments based on a theory that the government improperly deducted alleged Medicare overpayments from reimbursements due to the debtor under the Medicare provider agreement. Insofar as is relevant here, the fundamental holding was that the government had recouped the overpayments, as opposed to setting them off; in consequence, there was no preferential transfer but merely an adjustment of the debtor's liability. The case did not even tangentially involve the question of whether an alleged right to repayment which, if valid, would entitle the holder to the remedy of recoupment, perhaps among others, is a "claim" within the meaning of the Code.

*Mercy Hospital* is more closely in point. The debtor there claimed that the DSS's post-petition deduction of alleged pre-petition overpayments from Medicaid reimbursements to the debtor violated the automatic stay in 11 U.S.C. § 362(a)(7) and sought to recover the amounts deducted. DSS contended that it enjoyed sovereign immunity from the debtor's claim, that it merely effected a right to recoupment, and that its actions did not violate the stay. The case turned on the question whether the DSS had made a "claim" against the debtor within the meaning of Section 106(a) of the Code, as the making of such a "claim" would have waived sovereign immunity under that provision.

The Bankruptcy Court began from the premise that a waiver of sovereign immunity flows not only from the filing of a formal proof of claim, but from an informal assertion of a right to payment as well. Slip op. at 7, citing *In re Town & Country Home Nursing Services, Inc.*, 963 F.2d 1146, 1150 (9th Cir. 1992). But it went on to distinguish *Town & Country* on the ground that the case involved setoff, whereas the DSS in *Mercy Hospital* had exercised the right of recoupment.[2] It reasoned that "[r]ecoupment ... is an equitable defense which allows a defendant to reduce its liability on a plaintiff's claim," slip op. at 8, and concluded that recoupment is

---

**2.** Recoupment is distinguished from setoff primarily in that recoupment involves mutual obligations arising from the same transaction, whereas setoff involves offsetting obligations from different transactions. SEDGWICK § 1033; *see, e.g., In re University Medical Center*, 973 F.2d 1065, 1079–80 (3d Cir.1992).

not a "claim" within the meaning of the Code § 101(5)(A) because it does not allow for affirmative recovery, *id.* at 12–13. In consequence, it dismissed the debtor's adversary proceeding for lack of jurisdiction.

*Mercy Hospital* of course is distinguishable in that it actually held only that DSS's recoupment of alleged overpayments, without involvement in the bankruptcy process, did not constitute the making of a "claim" within the meaning of Section 106(a) and therefore did not waive its sovereign immunity. Its comment concerning Section 101(5)(A) was dictum. Nevertheless, this Court need not rest on that ground. To whatever extent *Mercy Hospital* is read as indicating that recoupment does not rest on a "claim" within the meaning of Section 101(5), this Court respectfully disagrees for the reasons set for above and declines to follow it.

Accordingly, the Court holds that the DSS's contention that it was entitled to recover, by any means and in any form, alleged overpayments to the debtor was a "claim," that it is precluded by the confirmation order from seeking recovery, and that the underlying right to recovery has been discharged. Nonetheless, it is important to emphasize the narrow scope of this ruling. The Court does not express any view as to whether the relationship between the parties gave rise to a right on the part of the DSS to recoupment in the first place or whether, had the DSS asserted such a claim in the bankruptcy, the claim could have been discharged. It holds only that the DSS's deliberate decision to avoid the bankruptcy proceeding now precludes it from pursuing the matter further.

For all of the foregoing reasons, the order of the Bankruptcy Court is affirmed.

SO ORDERED.