**In re JONES, Paul S., Kerbow–Jones, Belinda A., Debtors.**

No. 01–14599–9P7.

United States Bankruptcy Court,
M.D. Florida,
Ft. Myers Division.

Oct. 10, 2002.

Phillip J. Jones, Wilkins, Frohlich, Jones, Hevia, Russel, Port Charlotte, FL, for debtors.

Thomas S. Heidkamp, Ft. Myers, Chapter 7 Trustee.

## ORDER ON MOTION TO IMPOSE SANCTIONS (Doc. No. 17)

ALEXANDER L. PASKAY, Chief Judge.

The matter under consideration is a Motion to Impose Sanctions for Violation of 11 U.S.C. § 524 (Doc. No. 17), filed by Paul S. and Belinda Kerbow Jones (Debtors), on May 31, 2002. The Debtors seek the imposition of sanctions against Annette Sandberg, Chief of the Washington State Patrol (State Patrol). A brief recap of the procedural history leading up to the matter under consideration should be helpful to the understanding of the background of the issue raised by the Motion.

Pursuant to the Stipulated Facts, filed by the parties, the background of this case can be summarized as follows: The Debtor, Paul S. Jones, was a Washington State Patrol Trooper, who was placed on temporary disability status from November 28, 1983 through November 30, 1984. During that time, he received his full salary. (Stip.¶ 1). On June 1, 1984, the State Patrol placed the Debtor on permanent disability status consistent with RCW 43–43–040. On June 29, 1984, the Debtor signed a "Conditions of Disability Status," acknowledging that he could not draw on the Department of Labor and Industries (L & I) benefits without a reduction in patrol benefits and that the failure to comply with these provisions and any other "statutory requirements" could cause his disability allowance to be denied. (Stip. ¶¶ 2 and 3 and Exh. 1 of Stip.). From February 1988 through April 1990, the Debtor received L & I time loss payments in the amount of $20,985.67, without the knowledge of the State Patrol. In addition, in August of 1996, the Debtor received a lump sum of $41,420.39. (Stip.¶ 4).

The genesis of the present controversy stems from a lawsuit filed by the State Patrol against the Debtor in the Superior Court of the State of Washington. In the Amended Complaint, filed on October 22, 1999, the State Patrol sought a money judgment against the Debtor in the amount of $62,406.06. (Exh. 2 of Stip.). On April 6, 2001, the Superior Court entered a money judgment, by default in favor of the State Patrol in the amount of $62,406.06 against the Debtor. The Superior Court did not make any finding concerning the basis of the judgment it entered. (Exh. 3 of Stip.). The State Patrol contends that the payments received from L & I should have been deducted from the Debtor's disability benefits. It is conceded by Ms. Sandberg that the State Patrol attached the Debtor's disability check and that the State Patrol continues to attach the Debtor's disability benefits. (Stip.¶ 11). All action taken in the state court proceeding occurred pre-petition, although the attachment of the Debtor's disability benefits has continued post-petition.

On August 6, 2001, the Debtors filed their Voluntary Petition for Relief under Chapter 7 of the Code. On their Schedule of Liabilities, the Debtors properly listed the Judgment of the State Patrol as one of their liabilities. There is nothing in the record, which indicates that Ms. Sandberg, as Chief of the Washington State Patrol, did not receive the notice of the commencement of the case. This notice included all relevant dates including the bar date to file complaints to challenge the dischargeability of debts, such as the debt owed by the Debtor to the State Patrol, pursuant to 11 U.S.C. § 523(c) and F.R.B.P. 4007.

On December 5, 2001, the Debtors received their discharge and on the same date, this Court entered its Final Decree and closed the Chapter 7 case. On March 13, 2002, the Debtors filed their first Motion to Impose Sanctions. Since the case was already closed, on March 15, 2002, this Court entered an Order Striking the Debtor's Motion. Notwithstanding, on March 29, 2002, the State Patrol filed a "Notice of Appearance and Answer." On May 6, 2002, the Debtors filed a Motion to Reopen the closed case which was granted on May 16, 2002, for the limited purpose of enabling the Debtors to file a Motion for Sanctions, if so deemed to be advised.

On May 31, 2002, the Debtors filed their renewed Motion, which is the Motion presently under consideration. On June 14, 2002, the State Patrol again filed a "Renewed Special Notice of Appearance and an Answer." Although this Court scheduled a Preliminary Hearing on the Motion, it subsequently cancelled the hearing based on the Stipulation of the Parties, and ordered that the issues raised by the Motion would be considered on submission of briefs in lieu of oral arguments.

In support of the Motion to Impose Sanctions, the Debtors assert three basic arguments: (1) procedurally, the State Patrol is violating 11 U.S.C. § 524, by continuing to attach the Debtor's disability checks following the entry of the discharge; (2) the State Patrol cannot argue sovereign immunity because the Debtors are not seeking affirmative relief in the form of damages but are only seeking enforcement of their discharge pursuant to 11 U.S.C. § 524; and (3) this is not a situation of recoupment [sic].

In opposition to the Motion, the State Patrol contends the following: (1) that the action by the State Patrol is a recoupment of the disability payments made to the Debtor; (2) sovereign immunity protects the State Patrol, inasmuch as it has not appeared in any of the Debtors' bankruptcy proceeding, and specifically in written correspondence to Debtors' counsel, outlined its position during the pendency of the Debtors' bankruptcy case; and (3) that the *Ex Parte* Young doctrine is not applicable to the facts of this case.

■ This Court has considered the post-trial briefs submitted by the Parties, the Stipulation and concludes as follows. The Debtors concede that if the facts demonstrate that the current action by the State Patrol is a proper exercise of recoupment, then the State Patrol has not violated the discharge injunction. It appears, then that the threshold issue is whether or not this is a proper exercise of recoupment.

RCW 43.43.040(1)(b) provides as follows:
Disability of patrol officers.

The chief of the Washington state patrol shall relieve from active duty Washington state patrol officers who, while in the performance of their official duties, or while on standby or available for duty, have been or hereafter may be injured or incapacitated to such an extent as to be mentally or physically incapable of active service: provided that:

. . . . .

(b) Benefits under this section for a disability that is incurred while in other employment will be reduced by any amount the officer receives or is entitled to receive from workers' compensation, social security, group insurance, other pension plan, or any other similar source provided by another employer on account of the same disability.

The State Patrol cites, in support of its position that this is a proper exercise of recoupment, the cases of *In re Graves*, 234 B.R. 149 (Bankr.M.D.Fla.1999) and *In re Keisler*, 176 B.R. 605 (Bankr.M.D.Fla.

1994). In each of these cases, this Court determined that the disability benefit overpayments pre-petition and the deductions in benefits post-petition amounted to a recoupment, as the deductions were part of the same transaction. Therefore, the same were not violations of the automatic stay or of the discharge injunction. *Graves,* however, was limited to the issue of whether or not the continued recoupment was a violation of the automatic stay, as opposed to a violation of the discharge injunction. *Keisler,* although post-discharge, was in the context of an adversary proceeding seeking the determination of the dischargeability of a claim. Neither one of these scenarios are exactly similar to the case at hand.

 Both counsel approached the issue by considering the right of a creditor to resort to recoupment to recover the overpayment of the disability benefits. It is well established that the automatic stay does not prohibit recoupment, as distinguished from setoff. This is of course, a correct statement of the law; however, it has no application whatsoever once a debtor receives a discharge, by virtue of 11 U.S.C. § 362(c)(2)(C). This section provides, in general, that a stay of any other act under subsection (a) of that section continues until the earliest of the time a discharge is granted. Thus, it is evident from the forgoing that cases dealing with recoupment, in a chapter 7 context for violations of the automatic stay, are of no significance to the facts of this case.

 The ultimate resolution of the issue that must be determined by this Court is whether or not a discharged obligation could be enforced and collected by the method such as "recoupment," as opposed to other methods for debt collection, such as filing a suit or the use of other judicial processes including garnishment and attachments. The protection granted to a debtor by the discharge is broad and does not deal with any exceptions to the rule, which is set forth in 11 U.S.C. § 524(a)(1). This section provides that "a discharge in a case under this title ... voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged...." In addition, 11 U.S.C. § 524(a)(2), provides that a discharge:

> Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived....

It should be noted, at the outset, that the action of the State Patrol is clearly a recoupment and not a set-off. Next, while the discharge prohibits a setoff of any debt as to the personal liability of a debtor, Section 524(a)(2) of the Code does not prohibit a recoupment. Moreover, the term "debt" is defined by 11 U.S.C. § 101(12) as a liability of a claim, which in turn is defined by 11 U.S.C. § 101(5), to mean a "right to payment." Recoupment is a defensive mechanism, which does not seek affirmative relief but merely seeks to defeat or reduce the claim by the entity who seeks recoupment. Several courts have considered this exact issue in the context of discharged obligations.

In the case of *Brown v. General Motors Corp.,* 152 B.R. 935 (W.D.Wis.1993), a Chapter 7 debtor moved to reopen his closed case to file an adversary proceeding for monetary and declaratory relief against General Motors (his employer) for violation of the discharge injunction. He also sought to bar GM from recovering past benefit overpayments from future pension benefits. The district court in *Brown* held that right of GM to recover overpayments

to its participant pre-petition was in the nature of a "right of recoupment" and not a "claim," which was not affected by the participant's discharge in bankruptcy.

In *Brown*, the debtor retired and received temporary benefits under his pension plan; he then became entitled to receive social security disability benefits. He received both social security and pension plan benefits at the same time for limited period of time. Under the pension plan, when he received social security benefits, it reduced his right to benefits under the pension. He was overpaid and thus, under the plan's rules and regulations, the debtor would receive a deduction in future benefits for the overpayment. The debtor filed for Chapter 7 bankruptcy protection. The debtor listed GM as a creditor and the overpayment as a claim. The debtor received a discharge.

■■ In defense, GM asserted that the recovery of the overpaid pension funds was being accomplished under the doctrine of recoupment, which is unaffected by the bankruptcy discharge. The district court agreed, reasoning that because of the unique nature of recoupment, as a limited equitable defense, the right of recoupment did not constitute a claim within the meaning of 11 U.S.C. § 101(5). Recoupment is an equitable defense, which enables a defendant to reduce liability on a plaintiff's claim by asserting an obligation of the plaintiff, which arose out of the same transaction. Recoupment is only a challenge to the validity and extent of the plaintiff's claim, and no affirmative recovery is permitted. *Brown*, 152 B.R. at 938, citations omitted.

Since the right of recoupment carries no right to payment, it is not a claim. The district court indicated that it logically followed that the potential assertion of recoupment against a claim by the debtor did not constitute a "debt" within the

meaning of 11 U.S.C. § 101(12), which defines debt as "liability on a claim." Since right of recoupment is not a claim and its potential assertion is not a debt, the right is unaffected by a discharge in bankruptcy which operates as an injunction against actions to collect any *debt* discharged. *Brown*, 152 B.R. at 938.

The district court cited other cases that similarly recognized this principle as a basis for permitting recoupment post entry of a discharge. *See In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986); *In re Hiler*, 99 B.R. 238, 243 (Bankr.D.N.J. 1989). Therefore, under the facts of *Brown*, the district court determined that GM was not violating the discharge injunction by recoupment the overpayment against future benefits.

Although the bankruptcy court in the case of *In re Izaguirre*, 166 B.R. 484 (Bankr.N.D.Ga.1994) disagreed with the holding in *Brown*, specifically that the overpayment was not a "claim," and hence a "debt" of the debtor, it nonetheless held that the insurance company was entitled to recoup the overpayment, notwithstanding that the claim was discharged. *Izaguirre*, 166 B.R. at 492–494. The bankruptcy court in *Izaguirre* determined that since recoupment is a defense to a claim that a debtor might make to benefits due postpetition, it does not violation 11 U.S.C. § 524(a)(2) because the defense of recoupment adjusts the claim of the debtor under the contract. Hence, recoupment asserted as a defense is not an "offset" to a claim within the meaning of section 524(a)(2).

In *Keisler, supra*, this Court, similar to the holding in *Brown*, determined that the defense of recoupment asserted by the United States Veterans Administration (VA) was not a "claim" subject to a "debt" and therefore, the discharge injunction was not applicable.

In this case, the Debtors attempt to argue that this is in fact a setoff because the Amended Complaint sought relief to permit the State Patrol to cease making disability payments not to grant the State Patrol from ceasing to make future disability payments. This argument is not persuasive because the relief sought in the Amended Complaint is not necessarily the relief that was granted in the "Judgment Summary." The Judgment Summary merely granted the State Patrol a money judgment in the amount of $62,406.06. There was no mention regarding the manner within which the State Patrol would satisfy this Judgment.

Based upon the foregoing, under either analysis as set forth in *Brown* or *Izaguirre*, this Court is satisfied that the State Patrol is exercising a proper recoupment of its disability benefits, notwithstanding that the debt in the Final Judgment has been discharged. Regardless of whether or not the State Patrol obtained a judgment against the Debtor, the fact remains that the State Patrol has the ability to properly exercise its defense of recoupment to the future disability payments received by the Debtor with respect to the prior overpayments in benefits. Inasmuch as this Court finds that the recoupment is proper, it is not necessary for this Court to determine whether or not the State Patrol properly asserted a sovereign immunity defense.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Impose Sanctions for Violation of 11 U.S.C. § 524 (Doc. No. 17) be, and the same is hereby, denied.